Harry PEEBLES d/b/a the Harry Peebles Agency, Plaintiff,

v.

Anne MURRAY et al., Defendants.

Civ. A. No. 75–195–C2.

United States District Court, D. Kansas.

April 16, 1976.

John E. Shamberg, of Schnider, Shamberg & May, Kansas City, Kan., Charles W. Spooner, North Kansas City, Mo., for plaintiff.

Charles O. Thomas, of Weeks, Thomas, Lysaught, Bingham & Mustain, Kansas City, Kan., for defendant Anne Murray.

Donald W. Giffin, John J. Jurcyk, Jr., Kansas City, Kan., for defendant Marvin Josephson Associates.

N. Jack Brown, of Boddington, Brown & Unverferth, Kansas City, Kan., Rudich & Meyerson, Los Angeles, Cal., for defendant Alive Enterprises, Inc. and Allan Strahl.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

Plaintiff is a Kansas resident and maintains offices in Wichita, Kansas and Kansas City, Kansas, in which he is engaged in the business of promoting and producing shows and other entertainment performances. Plaintiff brings this breach of contract action against the above-named defendants pursuant to the diversity of citizenship provisions of 28 U.S.C. § 1332. The amount in

controversy, exclusive of interests and costs, exceeds $10,000.00. Service of process has been made by use of the Kansas long-arm statute, K.S.A. 60–308(b), on each of the defendants except defendant Murray who was personally served in Kansas at the Kansas State Fairgrounds in Hutchinson, Kansas. Motions to dismiss for lack of *in personam* jurisdiction and insufficiency of service of process have been filed by defendants Marvin Josephson Associates, Inc. (M.J.A.), Alive Enterprises, Inc. (Alive), and by Allan Strahl. Defendants Alive and Strahl request in the alternative that should their motions to dismiss be denied, the case be transferred to the Central District of California. Defendant Murray has filed a motion to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a).

We previously heard oral argument on these motions and took the matter under advisement. The parties agreed that the files in this action provide an ample basis upon which the questions of jurisdiction and service of process may be determined. After carefully reviewing the matter submitted, the court now makes the following findings and order.

Defendant M.J.A. moves to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure. The amended complaint alleges that all of the other defendants designated M.J.A. to arrange for the services of Murray and to contract with others to provide for her professional services.[1] The amended complaint alleges that M.J.A. acted through its division International Creative Management (I.C.M.), in negotiating with plaintiff concerning defendant Murray's appearance at the State Fair in Sedalia, Missouri. In addition, the amended complaint alleges that I.C.M. communicated and negotiated with defendants Alive Enterprises, Inc. and with Allan Strahl, an officer and employee of Alive. Plaintiff alleges that he relied upon M.J.A. in contracting with the fair officials in Missouri.

M.J.A. asserts that it is a booking agent and is employed by performing artists and their managers to receive offers from promoters and other employers of performing artists. The affidavit filed by Sugarman, an employee of I.C.M., discloses that she received such an offer by telephone from the plaintiff while he was in Kansas. M.J.A. contends that it was not authorized to commit defendant Murray to a particular performance, but instead limited its activities to receiving and transmitting offers to the artist. M.J.A. further argues that jurisdiction is lacking since the complaint fails to allege that the contract was made in Kansas or that the contract was to be performed in Kansas.

In the court's view, the jurisdictional issue may be determined from the affidavits which have been filed by both the plaintiff and the moving defendants. Counsel for these parties have agreed that an adequate basis for decision has been already developed by way of these affidavits and that this case is ripe for decision. The magistrate previously stayed discovery in this action pending our ruling on the jurisdictional matter. We first examine the material facts with respect to the motion to dismiss filed by the defendant M.J.A.

The relevant facts are found in the affidavits filed by Sugarman and by the plaintiff. Sugarman's affidavit discloses that she received on behalf of I.C.M. a phone call from plaintiff in January of 1975, concerning availability of artists who might perform at the 1975 Missouri State Fair. She advised plaintiff that Anne Murray and her group might be available for booking. Plaintiff subsequently submitted a telephone offer for the performance of Anne Murray and she communicated this offer to Alive, the personal agent for Murray and her group. Sugarman was orally advised by unnamed representatives of Alive that

---

1. Plaintiff independently contracted with the Missouri State Department of Agriculture to have defendant Anne Murray appear for a con-cert performance on August 21, 1975. Anne Murray did not appear and this lawsuit followed.

the Anne Murray group would accept plaintiff's offer and Sugarman advised plaintiff by telephone of this acceptance. Sugarman prepared contract forms for plaintiff's signature and mailed these forms to plaintiff in Kansas. Plaintiff's affidavit reveals that both the contract and some publicity materials were sent by Sugarman approximately January 28, 1975. Exhibit "A" to plaintiff's affidavit corroborates these events. Exhibit "A" is a letter dated January 28, 1975, signed by Sugarman and addressed to plaintiff's agency in Wichita, Kansas. The letter refers to enclosed contracts and publicity materials.

The amended affidavit filed by the plaintiff reveals that on February 24, 1975, Sugarman sent a "Revised Rider" to the contract that plaintiff had previously signed. (Exhibit "B"). On March 3, 1975, Sugarman sent plaintiff a superseding rider for the contract. (Exhibit "E"). On March 5, 1975, Sugarman informed plaintiff by letter that Murray had added a $750.00 sound allowance to her contract price and enclosed a set of sound requirements in the letter. (Exhibits "F" and "G").

Exhibit "I" is a letter signed by Allan Strahl and bears Alive Enterprises, Inc., letterhead. The letter is addressed to plaintiff in Wichita, Kansas, and is dated May 6, 1975. The letter indicates that Strahl had in his possession the I.C.M. contract for Murray's appearance set for August 21, 1975, in Sedalia, Missouri. The letter discusses the sound system for the concert and requests the plaintiff to check with "Fair personnel" and advise Strahl of the manner in which the sound was to be provided for Anne Murray. Exhibit "J" is a letter drafted by plaintiff that he sent to Ted Tillman of St. Louis, Missouri. Plaintiff discussed the sound system to be provided for Anne Murray in this letter. Enclosed was Strahl's letter of May 6. Exhibit "K" is plaintiff's letter to Strahl and advises that

plaintiff sent a copy of Strahl's letter to Tillman, the producer of the grandstand shows at the Missouri State Fair. Exhibit "L" is a letter plaintiff sent to Sugarman of I.C.M. The letter indicates that plaintiff had spoken with Strahl by telephone. The conversation concerned Murray's performance at Sedalia. The remaining exhibits, "M" and "N", are copies of correspondence between plaintiff and Sugarman concerning travel arrangements for Murray and her group, and the telegram sent by Sugarman on May 29 to plaintiff, which indicated that Murray was cancelling the performance at Sedalia.

In addition to the correspondence described above, plaintiff had several telephone conversations with Sugarman concerning the Murray concert during the period January 28 to May 29, 1975. These telephone calls were either made from or received in Kansas at plaintiff's offices. The conversations, together with the correspondence, are the facts upon which the jurisdictional dispute is based.[2] We next examine the applicable legal principles that control the resolution of this dispute.

■ It is well-settled that the Kansas long-arm statute [K.S.A. 60–308(b)] reflects legislative intention to exert jurisdiction over non-residents to the extent permitted by the due process clause of the Fourteenth Amendment. *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974). Whether due process is satisfied depends upon the nature and quality of the activities of the defendant, which must be determined on a case-by-case basis. *Misco-United Supply, Inc., supra.* The landmark case in the area is *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The court in *International Shoe* enunciated the "minimum contacts" test for determining the limits of due process on assertion of juris-

**2.** Plaintiff states in his affidavit that he subscribes to two trade journals in which I.C.M. advertises. The trade journals are apparently circulated in Kansas. Assuming this is correct, we find no special significance for jurisdiction-

al purposes in these facts. Standing alone, advertising in publications of general circulation has been held to be insufficient contact under due process. *Heyen v. May, et al.*, Civ. No. 75–238–C6 (D.Kan.1976) *unpublished.*

diction over a non-resident. It is equally clear that this test is not to be applied in a mechanical or quantitative fashion; merely counting "contacts" is not the proper approach. Instead, the quality and nature of the defendant's activities within the forum state are to be examined and should be viewed in relation to the fair and orderly administration of the laws. 326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. at 103.

■ We note that although plaintiff invokes three prongs of the Kansas long-arm statute, K.S.A. 60–308(b)(1), (2) and (5), in our view only the first ground could arguably provide the basis for upholding jurisdiction over defendant M.J.A. on the facts presented. No basis can be found for holding that a tortious act was committed within the State of Kansas for jurisdictional purposes. Nor can the court say that the alleged contract was to be *performed* in whole or in part within Kansas since the obvious purpose of the contract was to secure the appearance of Anne Murray at the State Fair in Sedalia, Missouri. Instead, if jurisdiction over the person of defendant M.J.A. may be found to exist, it must be based upon the ground stated in (b)(1)— "the transaction of any business within this state."

■ We turn to the Kansas law which has construed and applies this jurisdictional notion under the long-arm statute. In a broad sense, according to the Kansas court, "business" is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires. *Woodring v. Hall*, 200 Kan. 597, at 607, 438 P.2d 135 (1968). Under the facts contained in the relevant affidavits, it is clear that no agent of defendant M.J.A. entered the State of Kansas. Al-

though plaintiff asserts this is not a requisite for the conduct of business under Illinois law, after which the Kansas statute is patterned, in our view it is unnecessary to reach this question. Essentially the same factors which enter into a determination of whether the literal requirements of the long-arm statute have been met are involved in deciding whether due process requirements have been met. *Stonecipher v. Sexton*, 54 F.R.D. 435 (D.Kan.1972).

■ With these requirements in mind, we can only conclude that defendant M.J.A. lacks the essential minimum contacts with the State of Kansas, so that exercise of jurisdiction in this forum would offend traditional notions of fair play and substantial justice. The Sugarman and Peebles affidavits reveal that a contract form, several riders thereto, and some publicity materials were mailed into Kansas. The publicity materials were sent for use in the State of Missouri. A set of sound requirements, as well as a letter discussing the sound problem, were mailed by Sugarman into Kansas. Additionally, several telephone conversations between Sugarman and plaintiff occurred. Sugarman also caused a telegram to be sent to plaintiff in Kansas.

■ No great weight can be attached to plaintiff's assertion that I.C.M. advertises in trade journals circulated in Kansas. Indeed, plaintiff's affidavit belies any special reliance on the fact that I.C.M. so advertises. Plaintiff was not drawn into negotiations with I.C.M. as a result of advertising since he states that "over the years he has had many occasions to transact business . . . " with I.C.M. and with Bonnie Sugarman.[3] In fact, it is obvious that the negotiations here came about as a result of plaintiff's own activity since he initiated the contact with Sugarman by telephone in January, 1975, when he was trying to book a performer for the Missouri State Fair.

---

**3.** Neither the advertising in Kansas nor the *past* dealings between plaintiff and Sugarman are relevant to the present dispute. It is well-settled that the claim for relief must arise from, or be connected with the acts done in the forum. *White v. Goldthwaite*, 204 Kan. 83, 460

P.2d 578 (1969). The contacts must give rise to the cause of action. *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969). The claim for relief here arises only from the Murray engagement, not from these prior events.

The unilateral activity of plaintiff, which includes the telephone conversations he had with Sugarman, may not be considered in deciding whether a nonresident has the requisite contacts with the forum. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1297 (1957). Thus, whether jurisdiction can be sustained over defendant M.J.A. must rest upon what Sugarman did in Kansas as an agent for M.J.A.

When these acts are separated and isolated from plaintiff's own activity, it is readily apparent that Sugarman's acts are insufficient to sustain jurisdiction over M.J.A. Telephone conversations concerning negotiations have been held to be "of no significant weight" in determining whether a defendant has transacted business in Kansas. *Oswalt Industries, Inc. v. Gilmore*, 297 F.Supp. 307 (D.Kan.1969).

The limited mailing of contract forms and publicity materials with supplementary correspondence, including a telegram, simply does not equate with the transaction of business sufficient for due process requirements. The acts of Sugarman bear only a superficial resemblance to the facts in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), where a non-resident insurance company solicited a resident buyer to purchase insurance. The offer there was accepted and the resident made premium payments on the insurance policy until his death. Jurisdiction over the non-resident insuror was held inoffensive to due process. In *McGee*, the policy of protecting residents insured by out-of-state insurance companies provided the linchpin for the decision. 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226. The same policy issue is completely absent on the present facts. Moreover, there is no basis for holding that defendant M.J.A. through its agent Sugarman purposely sought to avail itself of the privilege of conducting activities within Kansas so as to invoke the benefits and protections of its laws.[4] This is an essential element of the due process analysis delineated in both the *Stonecipher* and *Hanson* decisions.

■ Further, plaintiff points out that failure to uphold jurisdiction over M.J.A. would allow it to escape long-arm jurisdiction merely by the manner in which it conducts all its business—*i. e.* by mail and phone. We find this argument unpersuasive. The focus in a jurisdictional dispute is not whether a particular defendant has evaded jurisdiction but rather whether it has done enough in a forum state so as to subject it to jurisdiction. For the reasons previously stated, we hold that the assumption of jurisdiction over the defendant M.J.A. would offend traditional notions of fair play and substantial justice. The motion to dismiss filed by M.J.A. must therefore be sustained.[5]

We next consider whether jurisdiction over the remaining defendants who have been served pursuant to the long-arm statute can be upheld. Both defendants Strahl and Alive were served and have filed motions to dismiss based upon lack of *in personam* jurisdiction.

■ It appears from the affidavit filed by Allan Strahl that Alive Enterprises, Inc., is a California corporation. It further appears that Strahl is an employee and an officer of Alive. As an employee and officer of Alive, Strahl is engaged in the business of representing performing artists as a personal manager. This function is apparently limited to advising and counseling entertainers concerning musical instrumentation and the use of proper sound systems.

4. We note that the Kansas court has reached the same conclusion on similar facts in *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974). The court indicated in *Misco* that "[m]erely negotiating a sales transaction over the telephone with persons residing in Kansas does not invoke the benefits and protections of the laws of Kansas." 215 Kan. at 854, 528 P.2d at 1253.

5. It follows that plaintiff's agency theory—that Strahl and Alive acted through M.J.A. by way of Sugarman's acts—may not be used to sustain jurisdiction over Strahl and Alive Enterprises. If the acts of an agent are insufficient for jurisdiction, then the principals may not be held solely on those insufficient transactions.

As a personal manager he does not have authority to accept employment offers on behalf of the performer.

The sole relevant contact that Strahl has with this forum is that he sent a letter on May 6 to the plaintiff. This letter enclosed a specifications list for the sound equipment to be used by Anne Murray. The affidavit further reveals that Strahl received several telephone calls from the plaintiff; these calls were presumably made while plaintiff was in Kansas. The affidavit filed by the plaintiff does not contradict these facts in any material way.

In the court's view, these contacts are insufficient in terms of due process to sustain long-arm jurisdiction over the defendant Allan Strahl. Since jurisdiction is sought to be upheld over defendant Alive Enterprises, Inc. through the acts of its agent and employee Strahl, and we have concluded that his motion to dismiss must be sustained, it follows that Alive's motion to dismiss must also be granted.

The alternative motions to transfer filed by defendants Alive Enterprises, Inc., and Allan Strahl need not be decided since their motions to dismiss are to be sustained.

 The motion to transfer filed by defendant Murray cannot in the court's view be sustained. A transfer pursuant to 28 U.S.C. § 1404(a) is premised on the power of a federal court to transfer an action to any other district where the action might have been brought. This language presupposes a transfer to a district where venue is proper. *Shutte v. Armco Steel Co.*, 431 F.2d 22 (3rd Cir. 1970), *cert. denied* 401 U.S.

910, 91 S.Ct. 871, 27 L.Ed.2d 808. Under 28 U.S.C. § 1391(a), where the action is based solely upon diversity of citizenship as it is here, an action may be brought only in the district where all plaintiffs, or all defendants reside, or in the district in which the claim arose. The Central District for the District of California is not the proper place of venue under § 1391(a); plaintiff is a Kansas resident, and defendant Murray is a resident of Canada rather than of California. The district in which the claim arose would appear to be Missouri rather than California.[6]

Accordingly, defendant Murray's motion to transfer is denied. Defendant Murray's motion for a stay of the proceedings is denied and she is ordered to answer or otherwise plead to the plaintiff's complaint within fifteen (15) days of the date of this Memorandum and Order.

The motions to dismiss the complaint which have been filed by defendants Marvin Josephson Associates, Inc., Alive Enterprises, Inc., and Allan Strahl for lack of *in personam* jurisdiction are hereby sustained. The action is to proceed here only against the defendant Murray. The plaintiff's motion for default judgment against defendant Murray is denied.

Counsel for defendants Marvin Josephson Associates, Inc., Alive Enterprises, Inc., and Allan Strahl shall prepare, circulate, and submit an appropriate journal entry of judgment reflecting the court's rulings herein.

IT IS SO ORDERED.

---

6. Where a claim arises is a question of substantive law requiring federal courts in diversity cases to apply state substantive law under the *Erie* doctrine. *Ryan v. Glenn*, 52 F.R.D. 185 (N.D.Miss.1971). Under Kansas law, the place of making a contract is irrelevant to the issue of where a cause of action arises for its breach. The controlling place is that of its breach—*i. e.* the place where the obligor failed to fulfill his obligation. *Alliance Life Ins. Co. v. Ulysses Vol. Fire Relief Assn.*, 215 Kan. 937, 529 P.2d 171 (1974). Under this test, the place of breach is in Missouri where Anne Murray failed to perform at the Missouri State Fair under the allegations of the complaint.