RUSTY ECK FORD–MERCURY
CORP. OF LEAVENWORTH,
Plaintiff,

v.

AMERICAN CUSTOM COACHWORKS,
LTD,

and

Jay Meyers, Defendants.

No. 01–2503–JWL.

United States District Court,
D. Kansas.

Jan. 23, 2002.

Norman E. Beal, Morrison & Hecker L.L.P., Kansas City, MO, Rebecca S. Yocum, Morrison & Hecker L.L.P., Overland Park, KS, for Plaintiff.

Teri L. Anderson, Kramer & Frank, P.C., Steven H. Mustoe, Thomas G. Stoll, Kurlbaum toll Seaman Mustoe & McCrummen, P.C., Kansas City, MO, for Defendants.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This action arises out of an arrangement plaintiff Rusty Eck Ford–Mercury Corp. of Leavenworth ("Rusty Eck") alleges it had to sell cars to defendants American Custom Coachworks, Ltd., ("American Coachworks") and Jay Meyers, American Coachworks' President, who, in turn, converted them into limousines to be resold. Plaintiff filed suit against defendants alleging that defendants sold limousines to customers without paying plaintiff for the cars in breach of their contract. Specifically, plaintiff alleges that defendants breached the parties' oral contract, committed fraud, entered into a conspiracy, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. This matter is currently before the court on defendants' motion to dismiss plaintiff's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Fed.R.Civ.P. 12(b)(3) and failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. 3). Defendants' motion is denied because the court has personal jurisdiction over both defendants, venue is proper and plaintiff's complaint has set out facts sufficient to support plaintiff's five causes of action.

## I. Background

Plaintiff Rusty Eck is an authorized dealer of Ford, Lincoln and Mercury automobiles with its dealership in Leavenworth, Kansas. Defendant American Coachworks is a California corporation engaged in the business of selling limousines. Defendant Jay Meyers is the President of American Coachworks and American Lim-

ousine Mfg., Inc. ("American Limousine"), a company affiliated with American Coachworks, based in Van Buren, Arkansas. Mr. Meyers owns all or substantially all of the common stock in both companies. Together, American Limousine and American Coachworks convert cars into limousines to be resold. American Limousine handles the actual conversion process in Arkansas. Once the limousines are created, American Limousine ships the vehicles to various locations to be sold by American Coachworks.

Plaintiff alleges in its papers that it began selling new Lincoln automobiles ("Towncars") to defendant American Coachworks many years ago. According to an affidavit of Rusty Eck's President, Danny Zeck, the two parties entered into an oral contract around 1984. As directed by American Coachworks, the Towncars were shipped by common carrier, FOB Leavenworth, Kansas, to American Limousine in Arkansas for conversion. Under the contract, title to the Towncars would remain with plaintiff until it was paid by American Coachworks for the Towncars. Plaintiff would also retain the "Manufacturer's Statement of Origin" ("MSO"). The state motor vehicle department requires an MSO in order to obtain the initial certificate of title to a motor vehicle. Thousands of Towncars were sold by plaintiff to American Coachworks. Under the parties' oral agreement, American Coachworks paid for each Towncar, with interest from the date of the delivery of the Towncar, at the time of the sale of the resulting limousine to the ultimate customer. When American Coachworks paid plaintiff, the MSO was delivered and title to the Towncars passed to American Coachworks.

In September, 2001,[1] American Coachworks disclosed to plaintiff that it had sold limousines to third parties "out of trust." American Coachworks issued its own statements of origin without paying plaintiff for the Towncars or obtaining the MSO's. At the time plaintiff learned of this practice, American Coachworks had sold 44 limousines out of trust. Since that time, plaintiff has received payment for only three of those Towncars.

In addition to the 44 Towncars sold out of trust, at the time American Coachworks disclosed the out of trust sales, it had possession of 26 other Towncars it had obtained from plaintiff. Since that time, plaintiff has been paid for six of those cars while at least nine of those Towncars have been transferred by American Coachworks to third parties out of trust. American Coachworks took this action, notwithstanding repeated representations by it that no additional out of trust sales would be made. In response to defendants' actions, plaintiff filed this five-count action to recoup and mitigate its damages and filed actions in Arkansas and California to recover possession of the remaining Towncars in those states.

Count I of plaintiff's complaint seeks damages for breach of contract with regard to the 44 Towncars sold out of trust. Count II seeks damages for breach of contract with regard to the 26 Towncars still held by American Coachworks at the time the out of trust sales were disclosed. Count III seeks damages for fraud by both defendants. Count IV seeks damages that occurred as a result of a conspiracy by defendants to defraud plaintiff out of the Towncars. Count V seeks damages from both defendants under RICO.

## II. PERSONAL JURISDICTION

■ Defendants argue that they should be dismissed from this case for lack of

---

1. The plaintiff's papers state that it was 60 days ago. The court will assume that is 60 days from December 10, 2001, the date the plaintiff's suggestions in opposition to motion to dismiss was filed.

personal jurisdiction. Plaintiff opposes defendants' Rule 12(b)(2) motion to dismiss, and, therefore, bears the burden of proving that the exercise of personal jurisdiction over defendants is proper. *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996). When a motion to dismiss for lack of personal jurisdiction is brought prior to trial on the basis of affidavits and other written materials, "the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995); *see also Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984) (citations omitted). The allegations in the complaint shall be taken as true if they are uncontroverted by the defendant's affidavits. *Id.* To the extent the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* However, only well pleaded facts in the plaintiff's complaint, as distinguished from conclusory allegations, must be accepted as true. *Id.* (citing *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir.1987); *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976)).

In a diversity action, personal jurisdiction over a nonresident defendant is determined by the law of the forum state. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir.1994). To exercise personal jurisdiction over a nonresident defendant, the court must ensure that "the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state," and that the due process requirements of the Constitution are satisfied. *Id.* at 1304–05. The Kansas long arm statute has been interpreted by Kansas courts "to allow jurisdiction to the full extent permitted by due process," such that these inquires are, for all practical purposes, duplicative. *Id.* at 1305. Nevertheless, the court may not "ignore the long-arm statute's enumerated provisions" by concluding that there is a jurisdictional basis on due process considerations alone. *World Paper Res., Inc. v. Buckeye Cellulose Corp.*, No. 98–2328–JWL, 1998 WL 928393, at *2 (D.Kan. Oct. 6, 1998) (citing *Electronic Realty Assoc., L.P. v. Paramount Pictures Corp.*, 935 F.Supp. 1172, 1175 (D.Kan.1996)).

## A. The Kansas Long Arm Statute

Plaintiff asserts that jurisdiction against defendants is proper under subsections (2) and (5) of the Kansas long arm statute, K.S.A. § 60–308(b) which provides in pertinent part:

> (b) *Submitting to jurisdiction process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

> . . . . .

> (2) commission of a tortious act within this state;

> . . . . .

> (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state . . . .

*Id.* The court concludes that jurisdiction over defendants is conferred by K.S.A. § 60–308(b)(5). In *Slawson v. Hair*, 716 F.Supp. 1373, 1376 (D.Kan.1989), the court reasoned that the enactment of § 60–308(b)(5) represents the Kansas legislature's "obvious effort to broaden the scope

of personal jurisdiction to include those instances where defendants have had no physical presence in Kansas." *Id.* Accordingly, for jurisdiction to exist pursuant to the "contract" provision of the Kansas long arm statute, defendants need not physically enter the forum state. *Id.*

Section 60–308(b)(5) states that jurisdiction will lie if the contract is to be performed "in whole or in part" within the forum. The Tenth Circuit has held that the payment of funds due under the contract to the plaintiff's offices is sufficient. *Continental Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1312 (10th Cir.1982). In the present case, plaintiff has offered the affidavit of Danny Zeck, President of Rusty Eck, to support its contention that a contract between plaintiff and defendants was formed, and that under the contract, defendants were to make payments to plaintiff's offices in Kansas. Therefore, the court concludes that, for purposes of defendants' motion to dismiss, plaintiff has offered sufficient facts to establish that the court has personal jurisdiction over the defendants pursuant to § 60–308(b)(5).[2]

**B. Due Process**

 Defendants also argue that the exercise of jurisdiction over them does not comport with due process considerations. For purposes of personal jurisdiction, "the constitutional touchstone" is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).[3] The Supreme Court clarified the standards for specific jurisdiction in *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Court reiterated that due process "minimum contacts" are established only where the nonresident defendant has "purposefully avail[ed] itself of the privilege of conducting activities in the forum State." *Id.* at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Such "purposeful availment" of the forum's benefits is required so that a nonresident defendant will not be forced to defend itself in a forum with which its contacts are only "random, fortuitous, or attenuated." *Id.* Indeed, due process concerns allow jurisdiction only where the defendant has engaged in activities within the forum such that it may "reasonably anticipate being haled into court there." *Id.* at 474, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

To determine whether specific jurisdiction is appropriate, the court must first decide whether the defendant has such minimum contacts with the forum state

---

**2.** Because it is clear that jurisdiction under the long arm statute is proper under § 60–308(b)(5), the court need not address plaintiff's contention that jurisdiction could also lie under § 60–308(b)(2).

**3.** Personal jurisdiction over nonresident defendants is characterized as either "specific" or "general." "Specific" jurisdiction exists where the plaintiff alleges a nexus between the defendant's activities within the forum and the injury sustained. Accordingly, the cause of action results from the defendant's specific activities within the state. *Kuenzle,*

102 F.3d at 455–56. In contrast, "general" jurisdiction exists where the nonresident defendant's contacts with the forum state are so pervasive that jurisdiction is conferred because of the "continuous and systematic" nature of the defendant's in-state activities, regardless of whether the cause of action arises from the defendant's specific acts within the state. *Id.* Here, this litigation clearly arises from defendants' alleged purposeful in-state activities, specifically the making and later breach of a contract to be performed, at least in part, in Kansas. Therefore, the court addresses only specific jurisdiction.

"that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559. Second, the court must then consider whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

When specific jurisdiction is based upon a contractual dispute, the court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendant purposefully established minimum contacts with the forum." *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174. A contract with an out-of-state resident, standing alone, is insufficient to establish minimum contacts in that out-of-state forum. *Id.* Jurisdiction is not avoided, however, solely because the defendant was not physically present in the forum. *Id.* at 476, 105 S.Ct. 2174. The Tenth Circuit has explained that the key issue is whether the defendant's contacts are attributable to his own actions, typically requiring affirmative conduct by the defendant which enables or promotes the transaction of business in the forum state. *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1420 (10th Cir.1988) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir.1986)).

Here, the court concludes that plaintiff has alleged sufficient facts to establish that defendants have minimum contacts with the forum state. The parties' course of dealing included defendants[4] ordering more than 70 Towncars, or more than $2 million in automobiles, from plaintiff's dealership in Kansas. Defendants have been doing business with plaintiff in the same manner for at least ten years. According to Danny Zeck's affidavit, defendants would place orders for Towncars with plaintiff in Kansas by mail and by facsimile.

The court does not find persuasive defendants' argument that jurisdiction cannot exist because plaintiff initiated contact with defendants in California and defendants never entered Kansas. It is clear that when a party chooses to enter into a contract with a Kansas corporation, the subsequent contacts cannot be said to be "random, fortuitous, or attenuated." *Marketing Group, Inc. v. Success Dev. Int'l, Inc.*, 41 F.Supp.2d 1241, 1244 (D.Kan.1999)(holding that the defendant had minimum contacts with Kansas because it chose to enter into a contract with the plaintiff that was to be performed, at least in part, in Kansas and then the defendant continued to be in contact with the plaintiff regarding the contract); *World Paper Res., Inc. v. Buckeye Cellulose Corp.*, No. 98–2328–JWL, 1998 WL 928393 (D.Kan. Oct. 6, 1998) (holding that the defendant had minimum contacts with Kansas because it responded to the plaintiff's offer to contract, despite the fact that a contract was never formally signed).

Here, defendants were aware that they were entering into a contract with a Kansas corporation. Then over the course of ten plus years defendants made contacts with plaintiff regarding the parties' contract. Defendants knew that plaintiff was performing its part of the contract exclusively in Kansas. Plaintiff shipped millions of dollars worth of Towncars from Kansas to Arkansas for defendants' benefit. Defendants knew they were making payment to Kansas for the Towncars shipped. In sum, defendants' contacts

---

4. For purposes of this order, the court does not distinguish between the actions of American Coachworks and those of its President, Jay Meyers.

with Kansas are sufficient to comport with the minimum contacts requirement of the due process clause.

Once a court determines that a defendant has sufficient minimum contacts with the forum, it must determine whether the exercise of jurisdiction is reasonable such that it complies with "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To determine whether the exercise of jurisdiction is reasonable and fair, courts consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social issues.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1095 (10th Cir. 1998). When a nonresident has purposefully directed its activities toward the resident plaintiff, as here, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174. Defendants have failed to show that requiring it to defend a lawsuit in Kansas would offend traditional notions of fair play and substantial justice.[5] It is likely that defendants' numerous contacts with plaintiff occurred because plaintiff believed

that it would benefit economically from its actions. Consequently, it is fair to exercise personal jurisdiction over defendants and require them to come to Kansas to defend this lawsuit.

In sum, the court rejects the defendants' claim that personal jurisdiction is lacking in this case. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is denied.

## III. VENUE

■ Defendants also argue that the court must dismiss this action for improper venue. The standard for deciding a motion to dismiss for improper venue is typically the same as for deciding a motion to dismiss for lack of personal jurisdiction. *Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.,* 123 F.Supp.2d 569, 572 (D.Kan.2000) (citing *Electronic Realty Assoc. v. Paramount Pictures Corp.,* 935 F.Supp. 1172, 1175 (D.Kan.1996) (further citations omitted)).

Venue in this case is governed by 28 U.S.C. § 1391(a). According to that section,

> A civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is

---

5. The sole case plaintiff cites for the proposition that exercising jurisdiction would be unfair and unjust is *Peebles v. Murray,* 411 F.Supp. 1174 (D.Kan.1976), a case that was subsequently disapproved of by this district in *Carrothers Construction Co. v. Quality Serv. and Supply, Inc.,* 586 F.Supp. 134, 136 (D.Kan.1984) and disagreed with in *Thermal*

*Insulation Systems, Inc. v. Ark–Seal Corp.,* 508 F.Supp. 434 (D.Kan.1980). Kansas courts have clearly rejected the *Peebles* court's view that physical presence is required under the Kansas long-arm statute. Moreover, absent *Peebles,* plaintiff cites to no other authority and provides no reasoning to explain why exercising jurisdiction would be unfair.

commenced, if there is no district in which the action may otherwise be brought.

Defendants assert that § 1391(a)(1) does not establish grounds for venue in the District of Kansas because American Coachworks and Jay Meyers are not Kansas residents. Under 28 U.S.C. § 1391(c), for purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." While American Coachworks is subject to personal jurisdiction in Kansas and, therefore, as to American Coachworks, venue would be proper, because there are multiple defendants that reside in different states venue is not proper under § 1391(a)(1) and the court must turn to § 1391(a)(2).

Under § 1391(a)(2), venue is proper here if a substantial portion of the events giving rise to the plaintiff's cause of action occurred in the District of Kansas. Defendants argue that venue is not proper because many of the events giving rise to this action occurred in California and Arkansas. With regard to actions that arise out of events in multiple states, the United States Supreme Court has instructed,

> in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (*but* not of the plaintiff)—may be assigned as the locus of the claim.

*Leroy v. Great W. United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). In *Merchants Nat'l Bank v. Saf-*

*rabank*, 776 F.Supp. 538 (D.Kan.1991), Judge Rogers pointed out that § 1391(b)(2) does not require the defendants' activities to be more substantial; rather, "the court need only determine if 'substantial' activities took place in Kansas." *Id.* at 541. He added, "[i]f the selected district's contacts are 'substantial', it should make no difference that another's are more so, or the most so." *Id.* (quoting Siegel, Commentary on 1990 Revision of Subdivisions (a), (b) and (e), 28 U.S.C. § 1391 (1991)).

■ Here, it is clear that a substantial portion of the activities giving rise to this cause of action occurred in the District of Kansas. Defendants were aware that plaintiff was located in Kansas. The Towncars were initially shipped to Kansas, the Ford MSO's were maintained in Kansas and payments for the Towncars were sent to Kansas. In terms of witnesses and availability of evidence, all of plaintiff's witnesses and evidence are located in Kansas and defendants are likely split between Arkansas and California. While it is likely that California may be a more convenient forum for defendants, venue is also proper in the District of Kansas.

## IV. Failure to State a Claim

Finally, defendants allege that plaintiff has failed to state a claim upon which relief can be granted. Specifically, defendants argue that plaintiff has failed to plead facts sufficient to enable the court and defendants to determine whether the statute of limitations has expired or who the necessary parties might be to this suit. Defendants allege that plaintiff's suit is ambiguous in an attempt to force defendants to defend a matter that is "mere supposition on [p]laintiff's part as to any 'scheme to defraud' or 'conspiracy.'"[6] Defendants argue that such plead-

---

**6.** Defendants do not raise Federal Rule of Civil Procedure 9(b) which requires fraud to

be pled with particularity. While it appears that Rule 9(b) could apply, the court does not

ing is in violation of the requirements of Federal Rule of Civil Procedure 9(f). Despite citing to Rule 9(f), defendants do not elaborate on their argument nor do they provide any case law to support their contention.

The court concludes that plaintiff's complaint should not be dismissed under Rule 9(f). Rule 9(f) provides: "For purposes of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." With regard to this rule, "[i]t should be made perfectly clear that Rule 9(f) does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when they actually are interposed." 5 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1309, at 696 (1990). Instead of being governed by Rule 9(f), "[w]hether or not allegations of time and place are required is determined by the substantive nature of the suit, the principles governing the motion for a more definite statement, and the general rules of pleading." *Id.* Defendants do not point to particular causes of action that are lacking sufficient allegations of time and place. Accordingly, the court rejects defendants' claim that plaintiff's complaint should be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss (Doc. 3) is denied.

address it because defendants do not rely on it as a basis for relief.