202 P.3d 734 (2009)
MR. CINNAMON OF KANSAS, INC., Appellant,
v.
David G. HALL d/b/a A & H Tobacco, Appellee.
No. 99,722.
Court of Appeals of Kansas.
March 13, 2009.
*738 Henry H. Blase, of Law Offices of Blase & Blase, of Wichita, for appellant.
Jeffrey N. Lowe, of Stinson, Lasswell & Wilson, L.C., of Wichita, and Nancy Ogle, of Ogle Law Office, L.L.C., of Wichita, for appellee.
Before CAPLINGER, P.J., MALONE and LEBEN, JJ.
MALONE, J.
Mr. Cinnamon of Kansas, Inc. (Mr. Cinnamon), appeals the district court's decision to dismiss a civil lawsuit against David G. Hall d/b/a A & H Tobacco of Kentucky. The sole issue is whether the district court erred by determining that it lacked personal jurisdiction over Hall. We agree with the district court that Hall had insufficient personal contacts with the state of Kansas to expose him to the jurisdiction of the Kansas courts. Accordingly, we affirm the district court's decision granting Hall's motion to dismiss.
Hall has been a continuous and permanent resident of Kentucky since 1991. He was formerly an officer and shareholder of a Kentucky corporation known as A & H Tobacco, Inc. (A & H Tobacco). A & H Tobacco was in the business of purchasing tobacco products from various suppliers for resale in Kentucky. The corporation was active and in good standing in Kentucky until it was administratively dissolved on November 1, 2003.
In the spring of 2003, Chris Meade, an employee of A & H Tobacco, attended a trade show in Las Vegas, Nevada. Either at the trade show in Las Vegas or by telephone from Kentucky shortly after the trade show, Meade spoke with Tony Bryant, an employee or representative of Tobacco Center, Inc. (Tobacco Center), of Miami, Florida. A & H Tobacco had dealt with Bryant before and had previously purchased cigarettes from Tobacco Center for resale in Kentucky. Bryant asked Meade whether A & H Tobacco would be interested in purchasing some Marlboro cigarettes. However, Bryant did not disclose the name of the seller or the location of the cigarettes. Meade contacted Hall and informed him that Bryant had Marlboro cigarettes for sale. On behalf of A & H Tobacco, Hall authorized Meade to purchase the Marlboro cigarettes from Tobacco Center. The parties did not enter into a written contract.
James J. Aboud is the president of Mr. Cinnamon, a distributor of tobacco products located in Wichita, Kansas. According to Aboud's affidavit, in the spring of 2003, while in his Wichita office, he talked with Bryant concerning the possible sale of a large quantity of Marlboro cigarettes owned by Mr. Cinnamon that were stored in a warehouse in Kansas City, Missouri. According to Aboud, Bryant told him that A & H Tobacco of Kentucky would purchase the cigarettes.
On April 11, 2003, the cigarettes were shipped from Kansas City, Missouri, to "A & H Tobacco/Chris Meade" in Kentucky according to the shipping documents associated with the cigarettes. The invoice for the cigarettes, dated April 7, 2003, however, originated from "Mr. Cinnamon Tobacco Dist." of Wichita, Kansas. When A & H Tobacco received the shipment of cigarettes, it determined that many of the packages were counterfeit and most of the products were substantially damaged and unsuitable for resale.
A & H Tobacco contacted Bryant about the shipment. Bryant instructed A & H Tobacco to remit payment to Mr. Cinnamon for the cigarettes that could be sold and to return the damaged and counterfeit cigarettes to Mr. Cinnamon. A & H Tobacco remitted a check in the amount of $30,000 to "Mr. Cinnamon of Kansas" for the portion of the undamaged and noncounterfeit cigarettes. The check had the name "A & H Tobacco" printed at the top, and Hall signed the check on the line designated authorized signature. On the check stub attached to the payment, the name "A & H Tobacco" was printed at the top, and the name "A & H *739 Tobacco, In" was printed at the bottom. A & H Tobacco returned the damaged and counterfeit cigarettes to Mr. Cinnamon. However, Mr. Cinnamon refused delivery and the cigarettes were returned to A & H Tobacco.
On February 26, 2007, Mr. Cinnamon filed a petition in the Sedgwick County District Court against David G. Hall d/b/a A & H Tobacco. By that time, the corporate entity of A & H Tobacco had been dissolved. In the petition, Mr. Cinnamon alleged Hall purchased tobacco products from Mr. Cinnamon for the agreed price of $196,350, but that Hall only paid $30,000. Therefore, Mr. Cinnamon requested judgment against Hall in the amount of $166,350, plus prejudgment and postjudgment interest.
Hall filed a motion to dismiss on the ground that the district court lacked personal jurisdiction over him. Both parties filed briefs, including affidavits from Aboud, Hall, Meade, and Bryant. Following a hearing, the district court granted Hall's motion to dismiss, finding Hall had insufficient personal contacts with the state of Kansas to expose him to the jurisdiction of the Kansas courts. Mr. Cinnamon timely appeals.
On appeal, Mr. Cinnamon claims the district court erred by granting Hall's motion to dismiss. Specifically, Mr. Cinnamon maintains that Hall had sufficient personal contacts with the state of Kansas to expose him to the jurisdiction of the Kansas courts.
The determination of whether a Kansas court has personal jurisdiction over a party involves a two-step analysis. First, the court decides if there is jurisdiction under the Kansas long arm statute, K.S.A.2008 Supp. 60-308(b). The Kansas long arm statute is liberally construed to assert personal jurisdiction over nonresident defendants. Second, if the Kansas long arm statute is satisfied, the court inquires if the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment to the United States Constitution. Kluin v. American Suzuki Motor Corp., 274 Kan. 888, 894, 56 P.3d 829 (2002).
Since the Kansas long arm statute has generally been interpreted as broadly as possible to the limit of due process requirements, most of the cases focus on the second step of the analysis regarding due process. In some states, courts have explicitly reduced their analysis to a one-step approach: Is the exercise of jurisdiction constitutional? Kansas has not formally adopted such an approach. Leben and Hinderks, Long-Arm Jurisdiction in Kansas, 62 J.K.B.A. 27 (May 1993).
There are two broad types of personal jurisdiction which a state can exercise: specific and general. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a foreign state. The Kansas long arm statute, K.S.A. 60-308(b), defines when Kansas exercises specific jurisdiction over a nonresident defendant. General jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. Merriman v. Crompton Corp., 282 Kan. 433, Syl. ¶ 5, 146 P.3d 162 (2006).

Jurisdiction under the Kansas long arm statute
K.S.A.2008 Supp. 60-308(b)(1) provides in relevant part:
"Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
(A) Transaction of any business within this state;
....
(E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state."
Mr. Cinnamon argues that jurisdiction was proper under either of the above two subsections.
Before we can analyze Mr. Cinnamon's claims under the long arm statute, it is necessary to clarify Hall's relationship with A *740 & H Tobacco and to determine whether Hall should be treated separately from A & H Tobacco, a corporate entity. For the most part, Mr. Cinnamon's arguments in district court and on appeal assume that Hall and A & H Tobacco are one and the same. However, A & H Tobacco was an active corporation in good standing in Kentucky at the time of the business transaction in question in the spring of 2003. The corporation was subsequently dissolved and Mr. Cinnamon brings this lawsuit against Hall in his individual capacity. This distinction is significant as it relates to the question of personal jurisdiction.
The doctrine of alter ego is used to impose liability on an individual who uses a corporation merely as an instrumentality to conduct his or her own personal business. Such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation. Under the alter ego doctrine, the court may disregard the corporate entity and hold the individual responsible for his or her acts knowingly and intentionally done in the name of the corporation. The court should consider the following factors in determining whether it is justified to disregard the corporate entity:
"`(1) Undercapitalization of a one-man corporation, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) the use of the corporate entity in promoting injustice or fraud.'" Sampson v. Hunt, 233 Kan. 572, 579, 665 P.2d 743 (1983).
The sole ownership of a corporation by an individual is not sufficient in itself to treat the corporation as an alter ego of the owner and to justify a disregard of the corporate veil. Each case must rest upon its special facts. However, a court's power to pierce the corporate veil is to be exercised reluctantly and cautiously. 233 Kan. at 579, 665 P.2d 743.
Here, Mr. Cinnamon has not articulated a piercing the corporate veil argument on appeal. Generally, issues not briefed by the appellant are deemed waived or abandoned. Cooke v. Gillespie, 285 Kan. 748, 758, 176 P.3d 144 (2008). Furthermore, the record on appeal contains information that Hall was the sole officer, registered agent, and incorporating director of A & H Tobacco, but it provides no other evidence relevant to any of the factors identified in Sampson. Given the reluctance of the courts to pierce the corporate veil, we conclude the activities of A & H Tobacco must be regarded as distinct from the activities of Hall for the purposes of determining personal jurisdiction over Hall in Kansas. Stated differently, whether A & H Tobacco submitted to the jurisdiction of the Kansas courts is not the issue in this case. The question we must resolve is whether Hall individually had sufficient personal contacts with the state of Kansas to expose him to the jurisdiction of the Kansas courts.

Transaction of any business
Under the long arm statute, Kansas courts have jurisdiction over any party who has engaged in the "[t]ransaction of any business" in Kansas. K.S.A.2008 Supp. 60-308(b)(1)(A). The phrase "transaction of any business" is all encompassing and was used by the legislature in its broadest legal sense with the intent to authorize the personal service of summons upon a nonresident corporate or individual defendant to the full extent of the due process clause. Woodring v. Hall, 200 Kan. 597, 606, 438 P.2d 135 (1968).
In White v. Goldthwaite, 204 Kan. 83, 88, 460 P.2d 578 (1969), the Kansas Supreme Court stated that when combined, the long arm statute and constitutional due process require three basic factors to coincide if jurisdiction is to be based on the transaction of business in Kansas:
"These are (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; *741 and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation...."
See also St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc., 245 Kan. 258, 264, 777 P.2d 1259 (1989), cert. denied 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990) (citing and applying these three factors).
Here, the only two alleged acts that tie Hall to Kansas in terms of transacting business are (1) he sent a check to Kansas in partial payment for the goods and (2) he shipped goods that he did not want back to Kansas. The second act of shipping the goods back to Kansas may have been purposeful but it did not further Hall's economic interests. In regard to the first act, Hall may have signed the check on behalf of A & H Tobacco, but any oral agreement in this case involved A & H Tobacco, not Hall personally.
In his sworn affidavit, Aboud alleged that "[o]n behalf of Mr. Cinnamon of Kansas, Inc., I agreed to sell to A & H Tobacco 11,220 cartons of Marlboro cigarettes at a price of $17.50 per carton." Aboud further alleged that the transaction was arranged entirely through Bryant and the cigarettes were stored in a warehouse in Kansas City, Missouri. Aboud's affidavit does not state that he ever dealt with or entered into a contract with Hall. Aboud's affidavit does not even allege any contact with Meade. In an unsworn declaration, Aboud claims that he contacted Meade and that Meade, on behalf of A & H Tobacco, agreed to purchase cigarettes from Mr. Cinnamon. However, this language is not included in Aboud's sworn affidavit.
Mr. Cinnamon shipped goods to A & H Tobacco in Kentucky, and Hall sent a check from A & H Tobacco for some of those goods to Kansas. If the partial payment constituted the transaction of any business, it was a transaction between Mr. Cinnamon and A & H Tobacco, not between Mr. Cinnamon and Hall. This could possibly be enough to grant Kansas jurisdiction over A & H Tobacco under the transacting any business subsection of the long arm statute when construed liberally. However, this does not render Hall subject to the Kansas long arm statute personally.

Partial performance of a contract
Mr. Cinnamon's argument that Hall partially performed a contract in Kansas somewhat overlaps the argument that Hall transacted business in Kansas. In regard to K.S.A.2008 Supp. 60-308(b)(1)(E), Mr. Cinnamon argues that Bryant acted as Hall's agent to enter into an implied contract with Mr. Cinnamon for the purchase of the cigarettes. Mr. Cinnamon argues that the contract was partially performed in Kansas when Hall accepted the goods shipped from Kansas and sent a partial payment to Kansas for those goods.
Mr. Cinnamon cites Aspen Products, Inc. v. Global Distributors, Inc., 24 Kan.App.2d 475, 947 P.2d 49 (1997). That case involved an oral agreement between the parties, wherein plaintiff agreed to sell and defendant agreed to buy a certain quantity of paper plates. The paper plates were to be manufactured in Kansas and delivered by plaintiff to defendant at its offices in Chicago. These same two parties had engaged in at least four separate contracts involving paper plates in past years. The plates were shipped from Kansas and defendant responded by sending a partial payment to plaintiff's home office in Kansas. Plaintiff sued defendant for the unpaid balance and the district court dismissed, concluding that plaintiff had not established long arm jurisdiction over the nonresident corporate defendant. 24 Kan.App.2d at 475-76, 947 P.2d 49.
On appeal, this court reversed and held that the Kansas courts had jurisdiction over the nonresident corporate defendant based on partial performance of a contract for two reasons: (1) The paper plates ordered by defendant were manufactured in Kansas for delivery to defendant on the contract in question *742 and (2) defendant made a partial payment on the agreement between the parties for the purchase of the paper plates. 24 Kan.App.2d at 478, 947 P.2d 49.
Aspen Products, Inc. is distinguishable from the case at bar. In Aspen Products, Inc., the paper plates were manufactured in Kansas. Here, the cigarettes were stored in Kansas City, Missouri. Aspen Products, Inc. does not support Mr. Cinnamon's contention that a partial payment to Kansas is sufficient by itself to establish jurisdiction pursuant to K.S.A.2008 Supp. 60-308(b)(1)(E).
Federal courts have found that the nonresident's payment of funds to the Kansas resident's office can constitute partial performance of a contract within Kansas when payment in Kansas is a term of the contract. Slawson v. Hair, 716 F.Supp. 1373, 1376 (D.Kan.1989); see also Continental American Corp. v. Camera Controls Corp., 692 F.2d 1309, 1312 (10th Cir.1982) (finding jurisdiction where partial payments were sent to Kansas and goods were manufactured in Kansas); Rusty Eck Ford-Mercury Corp. of Leavenworth v. Am. Custom Coachworks, Ltd., 184 F.Supp.2d 1138, 1141 (D.Kan.2002) (long arm jurisdiction for partial performance of a contract where plaintiff resided in Kansas and contract required that defendants make payments to plaintiff's offices in Kansas); Carrothers Const. Co., Inc. v. Quality Service and Supply, Inc., 586 F.Supp. 134, 136 (D.Kan.1984) (finding jurisdiction where terms of the contract required invoice be sent to Kansas for payment and nonresident defendant corresponded with Kansas office at least 19 times).
These federal cases are all distinguishable from the case at bar. In each federal case, the goods were either manufactured in Kansas or payment in Kansas was a term of the contract. Here, there was no evidence that the goods were manufactured in Kansas; instead, the goods were stored in Missouri. There was no written contract between the parties and no evidence that payment in Kansas was a term of the agreement. Upon receipt of the goods, Hall inquired of Bryant where he should send payment and the cigarettes that he did not want. Bryant responded that he should send the payment and the unused goods to Mr. Cinnamon in Kansas. The partial payment was in the form of a check with the name "A & H Tobacco" printed at the top, and the funds were not drawn from any personal account owned by Hall. We conclude Hall's partial payment for the cigarettes on behalf of A & H Tobacco does not render him subject to Kansas jurisdiction under subsection (b)(1)(E) of the long arm statute.

Due process
Even if Hall's contacts with Kansas satisfied one of the subsections of the Kansas long arm statute, Mr. Cinnamon would still have to make a prima facie showing that Hall's contacts satisfied the International Shoe Co. due process test. See Internat. Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Kansas Supreme Court summarized the International Shoe Co. test in Merriman, 282 Kan. 433, Syl. ¶ 15, 146 P.3d 162:
"When specific jurisdiction is asserted under the Kansas long arm statute, K.S.A. 60-308(b), due process requires that the nonresident defendant have certain minimum contacts with the forum in order for the exercise of jurisdiction to be constitutional. In considering whether the corporation's minimum contacts meet this standard, courts should consider the quality and nature of the defendant's activity in determining whether it is reasonable and fair to require defense in the forum, rendering jurisdiction consistent with traditional notions of fair play and substantial justice. Due process requires a demonstration that the nonresident defendant purposely established minimum contacts with the forum state, thereby invoking the benefits and protections of its laws."
A plaintiff's unilateral activities in the forum state cannot be used to create jurisdiction over the defendant. Instead, it is essential that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state thereby invoking the benefits and protections of its laws. The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction *743 solely as a result of random, fortuitous, or attenuated contacts. 282 Kan. 433, Syl. ¶ 18, 146 P.3d 162.
Here, there was no evidence that Hall personally negotiated with Mr. Cinnamon. Hall made no contact with Kansas either in person or through telephone, e-mail, or fax. He did not purposefully avail himself of the benefits and protections of Kansas laws sufficient to subject himself to personal jurisdiction under the minimum contacts test set forth in International Shoe Co. Therefore, even if Mr. Cinnamon could make a prima facie showing that Hall's contacts with Kansas satisfied one of the subsections of the long arm statute, he would not be able to show that Hall had sufficient contacts with Kansas to pass the second step of the test and satisfy the due process requirements.
We conclude the district court did not err in determining that Hall had insufficient personal contacts with the state of Kansas to expose him to the jurisdiction of the Kansas courts. Accordingly, the district court did not err in granting Hall's motion to dismiss for lack of personal jurisdiction.
Affirmed.