No. 39,373

Vincent E. Kilcoyne, doing business as City Ice and Storage Company, *Appellant*, v. The City of Coffeyville, a Municipal Corporation, *Appellee.*

(269 P. 2d 418)

Opinion filed April 10, 1954.

*T. Richard Liebert*, of Coffeyville, argued the cause and *Frank W. Liebert*, of Coffeyville, was with him on the briefs for appellant.

*Walter S. Keith*, of Coffeyville, argued the cause and was on the briefs for the appellee.

*Richard L. Becker* and *Morris D. Hildreth*, both of Coffeyville, as *amici curiae*.

The opinion of the court was delivered by

Parker, J.: This was an action instituted in district court under the Declaratory Judgment Act (G. S. 1949, 60-3127 to 3132, incl.) for the purpose of obtaining judicial construction of a zoning ordinance of the city of Coffeyville and a determination of the rights of the parties under its terms. Judgment was rendered in favor of the defendant city and the plaintiff appeals.

In substance, after reciting the names and addresses of the parties, giving the legal description of the plaintiff's property and identifying certain zoning ordinances of the city, material allegations of fact to be found in the petition can be stated as follows:

The Alpine Ice and Cold Storage Company, predecessors in title of plaintiff, constructed an ice making plant in 1928 and a cold storage locker plant in 1935 on the involved property and thereafter, and until 1950, it or its successors in title conducted businesses on

the premises similar to those to be described in the succeeding paragraph.

In 1950 plaintiff purchased the property and such businesses from the Coffeyville Ice Company, Inc., successors in title to the Alpine Company, and subsequently continued the operation and is now conducting the businesses of retail and wholesale ice sales; cold storage locker plant; preparation of meat and poultry for cold storage in lockers and home freezers; retail sales of groceries, meats and poultry; and custom supply of home freezers and lockers.

That under the ordinances of the city of Coffeyville the premises on which plaintiff is conducting the aforesaid businesses, and the additional operations hereinafter mentioned, are located in the commercial use district or zone as defined in the ordinances, such property adjoining the residential zone on the north and the industrial district or zone on the west and south.

On or about April, 1953, plaintiff commenced to remodel portions of the premises for the alleged purpose of improving his service and complying with regulations of the State Board of Health for better sanitation in the handling and processing of meat and poultry and the preservation thereof. These improvements consisted of removing the ice making equipment and converting the room theretofore occupied for ice manufacturing purposes into a meat and poultry cooler, a cutting and wrapping room for meat and poultry, and a small room about twenty-two feet by fifteen feet in size for killing animals and poultry to be prepared for sharp freezing and cold storage.

It is then alleged that since making the foregoing improvements the killing of animals has been performed only in the presence of licensed state veterinary inspectors, is not done daily, and is only incidental to the retail business of supplying customers renting cold storage lockers on the premises or storing meat and poultry in home freezers; that the new portion of the business as conducted by plaintiff is not a packing plant, a manufacturing operation or a nuisance; that there are no animals or poultry held on the premises overnight; that animals or poultry killed on the premises are delivered from the customer's conveyance directly into the enclosed holding room; that no by-products are manufactured; that the premises are cleaned daily and all offal removed each day of killing in sanitary covered containers approved by state authorities; that such operation is licensed by the State Board of Health and subject

to its rules and regulations; and that in the conduct of such business there is no smoke, odor, noise or unsightliness which might constitute a nuisance or be in any way detrimental to other businesses located in the vicinity or zone in which such business is operated.

Other allegations of the petition are to the effect that a dispute has arisen between the plaintiff and the city, which has notified plaintiff that the killing of animals on such premises in connection with the business conducted thereon is in violation of its ordinances; that plaintiff claims (a) the city zoning ordinances do not preclude the killing of animals and poultry on his premises; (b) that to construe and enforce such ordinances as to prohibit him from conducting such business upon the premises is unreasonable, arbitrary, and contrary to law; that unless the court interprets such ordinances and adjudicates the rights of the plaintiff thereunder he will be damaged and deprived of his property without any remedy at law.

The defendant's answer admits formal averments of the petition, denies generally all other allegations therein contained, and then alleges in substance the butchering of cattle in the commercial zone of the city and on the premises where plaintiff's operations are conducted is forbidden by the terms of the zoning ordinances of such city; that since September 8, 1953, defendant killed and slaughtered several beef cattle in his place of business in violation of such ordinances notwithstanding he had been advised such action would be in violation thereof; that he has informed the city authorities he intends to continue killing cattle in his place of business on each succeeding Tuesday regardless of such zoning ordinances; and that if he is permitted to continue his operation he will be actually operating a slaughter house in the commercial zone of the city in violation of its zoning ordinances.

Plaintiff's reply to the answer is quite lengthy and need not be detailed. It suffices to say it contains ample allegations and denials to join issue on all matters in controversy between the parties.

Having joined issue on the all important question involved in the lawsuit, i. e., whether plaintiff's action in killing and butchering livestock on his premises in the commercial zone is prohibited by and is in violation of the zoning ordinances of the city, and following the overruling of defendant's motion for judgment on the pleadings, the cause came on for trial before the district judge. When plaintiff attempted to proceed with the introduction of his testimony defendant objected thereto on the ground the petition failed to state

a cause of action in declaratory judgment in favor of plaintiff and against the defendant. Upon the overruling of this objection plaintiff introduced his evidence and defendant announced it desired to introduce no testimony. After this announcement the trial court heard arguments of counsel and took the case under advisement. Thereafter, and on October 12, 1953, it filed its findings of fact and conclusions of law and then rendered judgment thereon in favor of the defendant and against the plaintiff for the costs of the action.

The findings of fact and conclusions of law, on which the trial court based its judgment, read as follows:

### "FINDINGS OF FACT

"1. Plaintiff does now and since 1950 has owned the following described property in Coffeyville, Montgomery County, Kansas. (Here follows description), and has conducted thereon the businesses alleged in his petition.

"2. That the Defendant is a municipal corporation of the first class in Montgomery County, State of Kansas.

"3. That Ordinance 1978 of the said City as amended by Ordinances 4204, 3829 and 4238 is attached to Plaintiff's Petition and marked Exhibit 'F,' except that the boundaries of the use districts as set forth in Ordinance 4204 are omitted.

"4. That said premises of Plaintiff is located within the 'Commercial District' as said district is designated in said zoning ordinance.

"5. That before September 8, 1953, Plaintiff conducted that part of his business consisting of the killing slaughtering cattle and livestock for his purposes at a place outside the City Limits of the City of Coffeyville.

"6. That on September 8, 1953, Plaintiff completed an alteration and improvement of his premises and buildings for the purpose of conducting his killing and slaughtering operations therein in the Commercial District as defined by the zoning ordinances of the City of Coffeyville, rather than outside the City as before.

"7. That since September 8, 1953, Plaintiff has done his killing and slaughtering operations on his said premises in the Commercial District.

"8. That Plaintiff's killing and slaughtering operations are a kind of manufacture and treatment and not clearly incidental to the conduct of a retail business conducted on the premises.

"9. That Plaintiff's photographic exhibits accurately portray the places each purports to represent.

"10. That Plaintiff's Exhibit 'B' is a correct map of the area in the immediate vicinity of Plaintiff's premises.

### "CONCLUSIONS OF LAW

"1. That Plaintiff has used his premises in the Commercial District, as defined by the zoning ordinances of Coffeyville, for the purpose of killing, slaughtering, dressing and preparing for food purposes cattle and livestock.

"2. That under the zoning ordinances of the City of Coffeyville, such killing and slaughtering may be legally carried on only in the Industrial District, as

defined in such Ordinance and then only under the limitations therein provided.

"3. The intent and purpose of such ordinance is to exclude from the City the business of killing and slaughtering animals for food purposes, unless conducted in the Industrial District under the limitations provided in the ordinance.

"4. Plaintiff by such killing and slaughtering in the Commercial District has violated the zoning ordinance of said City.

"5. Judgment should be for Defendant."

Following rendition of the judgment plaintiff moved to amend, add to, substitute and strike certain of the trial court's findings of fact and conclusions of law. This motion was overruled. He then filed a motion for a new trial. When it was overruled he perfected the instant appeal.

It will simplify the problems presented by the appeal to direct attention, at the outset, to several matters which are not in controversy and might otherwise be subject to debate in disposing of the issues. These, all conceded by appellant, are that under our decisions the city has power and authority to enact zoning ordinances; that the limiting of the manner and place in which the slaughtering and killing of cattle and swine may take place in the city is a reasonable classification of business under zoning ordinances; and that the instant zoning ordinances, including the involved restrictions and limitations, were enacted long prior to the date on which the apellant, or his predecessors in title, commenced to slaughter and kill cattle and livestock on the premises in question.

Upon careful examination of the record, and after stripping arguments of all excess verbiage and legal terminology, it becomes apparent that in view of the evidence adduced at the trial the fundamental claims appellant advances as grounds for reversal of the judgment are (1) that, under the existing conditions and circumstances, the zoning ordinances of the city do not prohibit him from killing and slaughtering cattle and other livestock on his premises and (2) that an interpretation and enforcement of such ordinances by the city to prohibit him from conducting that portion of his business upon such premises is unreasonable, arbitrary and contrary to law.

Decision of the first of the foregoing questions depends, of course, upon whether the operations of appellant as disclosed by the facts of record are prohibited by the terms of the City's existing zoning ordinances, the material portions of which, conceded by all parties to be codified in Ordinance No. 1978, read:

"*Section 2.*

"*Use, District, Regulations:* In order to regulate and restrict the use of land the location of trades and industries, the location of buildings erected or altered for specified uses, the City of Coffeyville is hereby divided into zones or 'use districts,' of which there shall be three (3), known as: Residential District, Commercial District, and Industrial District.

"Except as hereinafter provided, no buildings shall be erected or structurally altered, nor shall any buildings or premises be used for any purpose other than is permitted in the zone of 'use district' in which such building or premises are located.

∴ · . . . . . . . . . . . . . .

"*Section 3.  Residence District:* In the Residence District no building or premises shall be used and no building shall be hereafter erected or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses: (Uses not involved and therefore not listed).

· "*Section 4.  Commercial District:* In the Commercial District all buildings and premises except as otherwise provided in this ordinance, may be used for any purpose permitted in the Resident District or for any other use except as the following:

"1. Junk yards.

"2. Contractor's storage yard.

"3. Coal, Coke, or wood yard.

"4. Machine shop.

"5. Any kind of manufacture or treatment other than the manufacture or treatment of products clearly incidental to the conduct of a retail business conducted on the premises.

"6. *Provided,* That no public garage shall have an entrance or exit for motor vehicles within three hundred (300) feet of an entrance or exit of a public or private school ground, public library, church, hospital, children's or old people's home, or other similar public or semi-public institutions.

"*Section 5.*

"*Industrial District:* In the Industrial District all buildings and premises except as otherwise provided in this Ordinance may be used for any use permitted in the Commercial District or for any other use except the following:

"1. Public Abattoirs.

(Uses 2 to 23, incl. not listed because they have no bearing on issues.)

"This section shall not be construed as prohibiting the use of room, place, or building within the Industrial District for the purpose of killing, slaughtering, dressing and preparing for food purposes of cattle, sheep, swine, chickens, turkeys, or other animals or birds, including the processing of by-products therefrom, when such killing, slaughtering, dressing and processing is carried on in compliance with the regulations of the Kansas State Board of Health and all other regulations, rules or laws applicable to the operation of such businesses."

Turning again to the record it may be said it discloses, that except for finding No. 8 as the appellant impliedly if not expressly admits, all findings of fact made by the trial court and its conclu-

sion of law No. 1, which we pause to note is actually a finding of fact, are supported by ample evidence and in no way in dispute.

The gist of appellant's principal claim respecting finding No. 8 is that it is not supported by the evidence and therefore the facts of record do not bring his operation within the prohibition of Section 4 (5) of the zoning ordinances. Let us see.

Excerpts from appellant's own testimony as abstracted read:

". . . I sell meat and frozen foods to customers for storage in their lockers and home freezers. From the time I purchased this business I have also done custom killing for my customers, but prior to September 8, 1953, the actual killing of the animals was done on Stark Avenue. After killing the animals we loaded them in a truck, took them to the premises on West 8th, finished the dressing, and put them in the refrigerator for chilling. Beef is chilled a week to ten days and a hog two or three days. Afterward we cut up the meat according to instructions. Prior to September, 1953, I had no facilities on West 8th Street for killing animals, but did for poultry. . . .

". . . My meat sales are made in different ways. I sell over the counter as retail sales to people who come in and buy meat for their home freezers or lockers in from maybe four or five or six pieces up to a carcass of beef, lamb, or pork; some come in for a piece of steak. I supply locker and home freezer customers either by selling them meat, or by custom cutting of meat or animals they bring in to me. This supplying of locker customers with meat either by selling it to them or custom butchering has been part of this business since I purchased it in 1950 and prior to that time when operated by my predecessor. Since the alterations sometimes a customer will bring us a live beef and will want only certain parts of it for their locker, the remainder we can sell to other customers. Other meat is bought from packers already dressed. Sometimes customers will have divided the beef before they bring it in. Prior to the time my alterations were completed I was not able to sell any of the meat because we were not State Inspected. With State Inspection there is an inspector of the Kansas State Board of Health present at the time of the killing and dressing of the animal, before and after. I applied in July for a 'slaughterhouse' license from the Kansas State Board of Health as I have done every year; and since September 8, I have been killing on my premises with a representative of the Kansas State Board of Health present.

"I have rented a slaughterhouse on the near edge of Coffeyville since March, 1950, and use it to kill animals after which the carcasses were brought to Coffeyville where they were refrigerated and cut up. The cut up meat was sold to locker customers and home freezers and also was custom killed. It was not sold over the counter. I now sell over the counter some meat that I kill.

"Prior to the 8th day of September, 1953, I followed the practice of killing animals at a place located just outside of the City Limits, and hauled the meat in a truck to 1616 West 8th.

". . . I kill only once a week. I don't have the facilities for killing every day. The number of cattle I kill will vary from two or three head in a week in the summertime to about 35 or 40 in a week in the winter. . . .

"Formerly, the only cattle that I killed were cattle that locker customers

brought in. They employed me to kill and process the animals and place them in their lockers. Under this arrangement I am employed to kill, process and put the animals in their customers locker for which I make a service charge. I do not own the meat. Under this new operation, I operate both ways. I now sometimes buy some animals which I process and sell the meat over the counter and to locker customers."

In the face of the foregoing testimony we have no difficulty in concluding that finding No. 8, as made by the trial court, is supported by substantial competent evidence. Therefore, under the universal rule prevailing in this jurisdiction (See *Bradbury v. Wise*, 167 Kan. 737, 208 P. 2d 209; *Shotzman v. Ward*, 172 Kan. 272, 279, 239 P. 2d 935; *In re Estate of Jones*, 174 Kan. 506, 514, 257 P. 2d 116; *In re Estate of Davis*, 175 Kan. 107, 259 P. 2d 211) such finding must be regarded as conclusive and will not be disturbed on appellate review. The trial court having found, on the basis of substantial evidence, in clear and unequivocal language the very facts required to bring appellant's business within the prohibition of Section 4(5) of the zoning ordinance, there is no sound basis for and it is asking too much of this court to hold to the contrary as a matter of law. Indeed if appellant's position on this point had merit we would be forced to the conclusion that nevertheless, under the confronting facts and circumstances, the city's zoning ordinance prohibits appellant's operation at his present location in the commercial zone. Whatever else may be said it is clear from the record that in killing and slaughtering cattle and livestock under the conditions and circumstances related by him in his own testimony he was actually operating a super de luxe slaughterhouse. It is equally clear that under the provisions of Section 5(1) the operation of such an enterprise was not even permitted in the industrial district of the city unless conducted and operated in accord with, and in conformity to, the requirements of the last paragraph of Section 5 heretofore quoted. Conceding, as appellant points out, that zoning ordinances are to be strictly construed (See *Babb v. Rose*, 156 Kan. 587, 134 P. 2d 655), does not do away with the salutary rule of equal application that in determining what an ordinance means, and how it is to be construed, you do not isolate one part and ignore the plain import and meaning of others but instead give force and effect to all provisions germane to the subject involved. When that is done we entertain no doubt as to the correctness of the trial court's conclusions of law Nos. 2, 3 and 4, which will not be repeated because heretofore quoted at length, or its judgment based upon such conclusions.

In reaching the conclusion just announced we have rejected, not disregarded, contentions advanced by appellant that interpretation and enforcement of the involved ordinance by the city to prohibit appellant from conducting the business of killing and slaughtering cattle and livestock upon his premises in the commercial zone is unreasonable, arbitrary and contrary to law. We are unable to concur in his view that a zoning ordinance which prohibits a custom killer, a custom slaughterer, or a custom butcher of livestock from conducting a business of that nature, even though—as here—it be carried on in a super de luxe slaughterhouse, in a commercial zone of a city under the conditions and circumstances disclosed by the instant record is unreasonable or in violation of the spirit and intent of G. S. 1949, 12-712, and the record fails to make it affirmatively appear that such ordinance is unreasonable when applied to appellant's property and the specific use he has been making of it. Under such circumstances appellant's contentions respecting the unreasonableness of the ordinance lack merit and cannot be upheld.

Neither have we overlooked a contention the trial court's conclusion of law No. 4, to the effect that by such killing and slaughtering in the commercial district appellant has violated the zoning ordinance of the city, is without the issues and therefore erroneous. The trouble with this contention from appellant's standpoint is that he overlooks the fact this is an action for declaratory judgment and that under the allegations of the answer, and his reply thereto, such question was placed squarely in issue. Nor have we failed to note a claim the trial court erroneously excluded evidence respecting whether the city permitted poultry dressing and killing plants to operate in the commercial zone. Assuming, without deciding, that this evidence was admissible for the purpose for which it was offered the record fails to make it appear such excluded testimony was brought to the attention of the trial court by affidavit or otherwise at the hearing of the motion for new trial in compliance with the requirements of G. S. 1949, 60-3001 to 3003, incl. The result, under our decisions, is that this claim of error is not open to appellate review. (*Babb v. City of Wichita*, 172 Kan. 416, 241 P. 2d 755; *State v. Beam*, 175 Kan. 814, 267 P. 2d 509.)

Divers other contentions advanced by appellant have been given consideration. We find nothing in them or in the arguments advanced in their support which warrants a reversal of the judgment. It is therefore affirmed.