No. 40,410

KANSAS HOMES DEVELOPMENT COMPANY, INC., et al., *Appellees*, v. THE KANSAS TURNPIKE AUTHORITY OF THE STATE OF KANSAS, *Appellant*.

(317 P. 2d 789)

Opinion filed November 9, 1957.

*Lester M. Goodell*, of Topeka, argued the cause, and *Robert M. Cowger*, of Topeka, and *Donald C. Little*, of Kansas City, were with him on the briefs for the appellant.

*Willard L. Phillips*, of Kansas City, argued the cause, and *Conrad Miller*, *Joseph H. McDowell*, and *Thomas C. Lysaught*, all of Kansas City, and *Charles W. Hess*, of Kansas City, Mo., were with him on the brief for the appellees.

The opinion of the court was delivered by

ROBB J.: This is an appeal in an eminent domain proceeding by the Kansas Turnpike Authority from an order of the district court granting a new trial and setting aside a verdict, and for costs. The landowner, Kansas Homes Development Company, Incorporated, had appealed from the award of the appraisers.

We shall refer to Kansas Turnpike Authority as the authority, to Kansas Homes Development Company, Incorporated, as the landowner, and to Wyandotte Township Sewer District No. 9 as the sewer district.

In the original eminent domain proceeding the landowner, the sewer district and certain mortgagee lienholders were all named as interested parties. The record shows the landowner was prin-

cipally engaged in the development and promotion of project housing; that it had developed the Stony Point Heights area consisting of 300 homes immediately north of the land in question; the landowner had acquired the land about a year before the commencement of the eminent domain proceeding; sixty-seven acres were platted into 245 lots of the approximate dimension of seventy-five feet frontage by one hundred feet in depth; at the time of the taking of the land, the only existing improvement was its inclusion in a benefit main sewer district with a main sewer in place and a disposal plant built by the sewer district in Stony Point Heights to serve that subdivision along with Stony Point South Subdivision, the land in question; Stony Point South Subdivision is located four and one half miles west of the city limits of Kansas City, Kansas, and some distance south of highways 24 and 40.

The authority commenced an eminent domain proceeding for the condemnation of a strip of land 300 feet in width running east and west in landowner's Stony Point South Subdivision. There were twenty-nine lots taken in their entirety and sufficient of eleven other lots was taken so that it is conceded for all purposes herein that forty lots were actually taken by the authority for turnpike right-of-way. This left a remainder of 205 lots to the landowner and the court-appointed appraisers filed their award as follows:

"Damages of land taken.................................$24,000.00
"Damages of every nature .............................. 36,000.00
subject to the unpaid taxes for sewers in Wyandotte Township Sewage District No. 9 in Wyandotte County, Kansas."

No application was made to have the appraisers determine what they intended by the "subject" clause or to set any amount of money in lieu thereof as an item of damage to the land but we are not concerned therewith at this time.

It was stipulated by the parties that October 4, 1955, was the day of the taking. There was a pretrial conference held on January 5, 1956, with all parties present, where stipulations were entered into but since some of the stipulations do not affect the appeal they will not be set out. Discussion was had regarding the measure of damages by reason of the taking and the court, in considering what recovery the sewer district would be entitled to, intimated that the sewer district could recover from the authority the full amount of taxes which had been spread against the property as a special assessment with which to pay outstanding twenty-five year bonds

issued by the sewer district prior to the condemnation of the land together with interest for the life of the bonds. The trial court here was apparently referring to the land taken. The court suggested that the sewer district compute the amount of its lien on the property for future purposes. In discussing probable instructions counsel for the sewer district remarked for clarification of an instruction that the lien it had was not the actual total because the amount should cover both the lien and the interest. The record lien of approximately $200.00 with interest would amount to some $400.00 for each lot. The court further stated that its thinking then was that the sewer district would have to look to the landowner. The colloquy just referred to followed a probable instruction to the effect that the sewer district had a lien against the described lots in a certain amount and the jury would be instructed to return its verdict for that purpose in favor of the sewer district. Apparently this colloquy refers to land not taken.

On January 6, 1956, there was another pretrial conference held with all parties present. This conference was restricted to discussion of authorities on whether evidence would be permitted as to the tax lien and whether there would be a separate award for value of land taken from the sewer district together with an additional award for the special assessment levied for retirement of bonds issued for installation of the sewer. The trial court ruled that the following would be added to the general instruction:

"That after they make their award, then of course it will become a question of apportioning the amount of the award. Of course there *is* mortgages on this thing; I assume they are parties to this thing, and I think I would hold that the taxes, the special assessments, were something that the Turnpike Authority had to assume and that the allotment of the award I would say was not affected by those special taxes. I think that is the way I would hold, and that the Township would have the legal right to look to the Turnpike Authority for those special taxes."

On January 9, 1956, the day set for trial, the court, before impaneling the jury, ordered a further pretrial conference. All parties were present. The trial court announced a change of opinion and ruled that the authority took the land free and clear of all special tax liens. The landowner could by experts establish the value of the land taken free and clear which would make the land of greater value than a piece of property subject to special assessments. The

sewer district would determine its lien and make it of record in the absence of the jury and after the final award on post-trial hearing that amount would be set over to the sewer district. The record contained statements to the effect that as to the value of lots not taken, the sewer district was not to be bound by that trial, and the authority, in reliance on the trial court's ruling that it would determine that fact in a post-trial proceeding, would have no evidence at the trial.

After impaneling the jury there was a colloquy between the court and counsel from which it could be gleaned that the special assessments would be taken out of the award for the land taken, as a post-trial matter, and the special assessments as to the remainder not taken would be an obligation of the title owners.

At the close of the evidence, the trial court instructed the jury and submitted special questions for its answer. The instructions are not challenged. The jury answered the special questions which will not be repeated here, and returned its general verdict substantially awarding the sum of $32,000.00 for the forty lots actually taken and $29,800.00 diminution of the 205 lots remaining based on October 4, 1955, as the day of taking. This made a total of $61,-800.00.

The sewer district filed a motion seeking the payment to it of $47,448.96 from the award of the jury and the authority contends that this amounts to acquiescence in the judgment or verdict, but we do not agree because we are of the opinion that this was merely a procedural step in carrying out the theory under which the case was tried, as stated by the court in the pretrial conference.

The landowner filed its motion and amended motion for new trial and the sewer district filed its motion for new trial but we will not reiterate them herein. The trial court sustained these motions for new trial and gave two specific grounds for doing so in a memorandum opinion, which were more succinctly set out in its journal entry. Ground (a) was:

"The court erred and abused its discretion in refusing to permit Sewer District No. 9, Wyandotte Township, Wyandotte County, Kansas, to introduce evidence by expert witnesses on the value of the land taken and the value of the land not taken, immediately after the taking, and in ruling that such Sewer District No. 9, Wyandotte Township, Wyandotte County, Kansas, would not be permited to offer such testimony and that it would not be bound by the award made by the jury, but that after the award had been made by the jury and at a post-trial hearing the Court would permit such Sewer District No. 9,

Wyandotte Township, Wyandotte County, Kansas, to introduce evidence by expert witnesses touching upon the value of the land taken and the damages, if any, to the remainder not taken, and the Court would, after hearing its testimony, determine what amount of the award made by the jury for damages to the remainder of this be allocated to Sewer District No. 9, Wyandotte Township, Wyandotte County, Kansas."

Much is said in the way of argument that Kansas does, or does not, follow the rule that an appeal from the award of appraisers in an eminent domain proceeding for the condemnation of land for public purposes is a single action but it has now been determined that such is a single action. (*Moore v. Kansas Turnpike Authority,* 181 Kan. 840, 317 P. 2d 384; *Collingwood v. Kansas Turnpike Authority,* 181 Kan. 838, 317 P. 2d 400; *Jenkins v. Kansas Turnpike Authority,* 181 Kan. 862, 317 P. 2d 401.)

Many of our decisions have discussed the granting of a motion for new trial for specific reasons, but we will refer only to *Fralick v. Kansas City Public Ser. Co.,* 168 Kan. 134, 211 P. 2d 443 and *Bernsden v. Johnson,* 174 Kan. 230, 255 P. 2d 1033. In the Fralick case it was held:

"If in ruling on a motion for a new trial, the trial court stated the ground on which the new trial was granted, and that ground is one which the supreme court can deal with as readily as the trial court, the supreme court will examine the question to see whether the reason given, as a matter of law, justified the ruling made." (Syl. ¶ 3.)

The above point is involved in this appeal by reason of the authority's second specification of error that the trial court erred in granting a new trial and such order of the trial court was an abuse of its discretion. We will dispose of this point now, however, since it was the first and primary reason specified by the trial court as justification for the granting of a new trial.

Although so contended by the authority, this is not an ordinary case where, during the progress of the trial, the trial court excludes certain evidence which must be produced at the hearing of a motion for new trial before this court on appeal will consider whether the trial court abused its discretion in excluding such evidence. (G. S. 1949, 60-3004; *Kilcoyne v. City of Coffeyville,* 176 Kan. 159, 167, 269 P. 2d 418; 1 Hatcher's Kansas Digest, rev. ed., Appeal and Error, § 490, p. 197; 2 West's Kansas Digest, Appeal and Error, § 977 [3], p. 583.) The general rule is that a trial court is vested with extensive discretion in ruling on a motion for new trial and such ruling will not be disturbed on appeal unless it appears there has been a

clear abuse of judicial discretion. (*Foster v. Marshall*, 178 Kan. 583, 587, 290 P. 2d 1031; 7A West's Kansas Digest, New Trial, § 6, p. 275; 4 Hatcher's Kansas Digest, rev. ed., New Trial, § 61, pp. 323, 324.)

The case of *Babb v. City of Wichita*, 172 Kan. 416, 241 P. 2d 755, is cited in the brief of the landowner and we pause to note there is some analogy between that case and the present one. In the Babb case the plaintiff, in support of her motion for new trial wanted to reoffer evidence (p. 421) but because no court reporter was present, the trial court refused the evidence and entered judgment for defendants. On appeal this court said the trial court had done more than commit a mere *error of law* (p. 421) and further stated:

"Trial courts are vested with a very large and extended discretion in granting new trials and new trials ought to be granted whenever in the opinion of the trial court the party asking for the new trial has not in all probability had a reasonably fair trial and has not in all probability obtained or received substantial justice." (p. 423.)

Here, as indicated in the pretrial conference of January 9, 1955, the trial court, in proceeding on its theory of the manner in which the case would be tried, entirely cut off the sewer district from offering any evidence throughout the trial as to the reasonable market value of the land. The trial court apparently was dissatisfied with the trial and in granting a new trial made it clear that it had concluded the above theory of procedure was prejudicial error. The court in our case was in much the same situation as the trial court in *Klopfenstein v. Traction Co.*, 109 Kan. 351, 198 Pac. 930, wherein this court stated:

"The trial court, feeling dissatisfied with the trial, that it had been hurried, and that the jury had not understood the instructions, and that the case had not been properly presented to them, although erroneously deeming the verdict inconsistent with the findings, did not err in ordering a new trial of its own motion." (Syl. ¶ 3.)

In the Klopfenstein case the trial court stated specifically the reasons upon which it based its ruling sustaining the motion for new trial, the same as the trial court did here.

We have said that the purpose of a motion for new trial is to give the trial court an opportunity to re-examine rulings made in the course of a trial and to correct any errors in the proceedings so that the parties may avoid the trouble and expense of having them corrected on appeal. (*Holton v. Holton*, 172 Kan. 681, 243 P. 2d 222;

*Krueger v. Krueger*, 174 Kan. 249, 255 P. 2d 621; 7A West's Kansas Digest, New Trial, § 1, p. 274.)

We do not deem it necessary to discuss the other reason stated by the trial court for granting a new trial in view of what has already been said herein. If ground (b) is error, the trial court will have ample opportunity to correct it during the new trial.

From the record we are convinced the trial court did not abuse its discretion in granting a new trial. The ruling appealed from is affirmed.