NOT DESIGNATED FOR PUBLICATION

No. 122,028

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GUDENKAUF TREE SERVICE INC.,
*Appellee/Cross-appellant*,

v.

DOUG JACOBS,
*Defendant*,

and

VIRGINIA DIESEL & TRUCK REPAIR INC.
*Appellant/Cross-appellee.*

MEMORANDUM OPINION

Appeal from Nemaha District Court, JOHN L. WEINGART, judge. Opinion filed June 25, 2021.
Affirmed.

*Bryan W. Smith*, of Smith Law Firm, of Topeka, and *William C. O'Keefe*, of O'Keefe Law Office,
of Seneca, for appellant/cross-appellee.

*Charles D. Baskins*, of Euler Law Offices, LLC, of Troy, and *William R. McQuillan*, of Troy, for
appellee/cross-appellant.

Before POWELL, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Steve Gudenkauf of Gudenkauf Tree Service, Inc. contracted with
Virginia Diesel & Truck Repair, Inc., a business incorporated and located in the state of
Virginia, to buy a remanufactured Caterpillar engine. But Gudenkauf was not satisfied
with the engine's performance in his truck or with Virginia Diesel's attempts during the

1

next 10 months to remedy the engine's problems. Gudenkauf eventually bought a remanufactured engine from Foley Industries in Topeka to replace the one he had bought from Virginia Diesel.

Gudenkauf then sued Virginia Diesel and its President, Doug Jacobs, for damages totaling $46,782.08. The district court found Virginia Diesel breached its contract but awarded Gudenkauf only $16,560.04. Virginia Diesel appeals, challenging the district court's findings that it breached its contract and that it could not inspect the engine post-trial. Gudenkauf cross-appeals, claiming the court erred by failing to award it all the damages it sought. Finding no error, we affirm.

*Factual and Procedural Background*

In July 2014, Steve Gudenkauf (Steve), was the vice president for Gudenkauf Tree Service, Inc. (Gudenkauf). After searching online, Steve called Doug Jacobs, who owns Virginia Diesel & Truck Repair, Inc. (Virginia Diesel) about buying a remanufactured engine and having it delivered to Kansas. Jacobs gave Steve the specifications for a 3126 Caterpillar Engine and told Steve he would email an estimate further describing the details of the engine. The estimate stated it was a proposed quotation for a warrantied "Remanufactured Caterpillar 3126 engine." The document proposed:

- Virginia Diesel would ship a remanufactured 3126 Caterpillar engine to Steve in Kansas in 10-14 days;
- Virginia Diesel would ship other items, as listed, with the engine;
- Steve would send $11,800 as payment for the remanufactured engine and listed items;
- Steve would ship to Jacobs the old "core" from his engine being replaced; and
- Jacobs would pay $2,500 if the old core engine passed his inspection.

2

The warranty at the bottom of the proposed agreement stated that Jacobs would warranty his craftsmanship for a year, but if an unapproved mechanic worked on the engine, the warranty would terminate.

When Steve received the proposed agreement, he was concerned about the estimated number of days it would take to get the engine. So with Jacobs' permission, Steve changed the estimated 10-14 days to 5 days and wrote Jacobs' initials next to the amendment. Steve signed the proposed agreement and emailed it back to Jacobs. That same day, Steve mailed a check to Virginia Diesel for $8,850, a portion of the total cost. Steve received the engine 12 days later then mailed the remaining $2,950 to Virginia Diesel. But when Steve received the engine, it appeared to have several parts missing and was a different engine than the one Jacobs had sent pictures of.

In June 2015, Gudenkauf sued Jacobs and Virginia Diesel in Nemaha County District Court, alleging four causes of action: breach of contract, fraud, breach of warranty, and unjust enrichment. The parties agreed the estimate or proposed agreement was an enforceable contract. Gudenkauf properly served Jacobs and Virginia Diesel in July 2015. Jacobs then moved pro se to dismiss, arguing the Nemaha County District Court lacked personal jurisdiction over him and Virginia Diesel. Gudenkauf opposed Virginia Diesel's motion, arguing it was void because Jacobs, a nonattorney, could not represent a corporation in a Kansas court of law. Gudenkauf also argued the district court had personal jurisdiction over both Jacobs and Virginia Diesel. Gudenkauf moved for default judgment against Virginia Diesel.

Jacobs' pro se response again argued that the court lacked personal jurisdiction over him and Virginia Diesel. Jacobs acknowledged that Kansas law requires a corporation to appear by an attorney but argued that the court should apply an unstated exception. After holding a hearing, the district court found it had personal jurisdiction

3

over Jacobs and Virginia Diesel and gave defendants 20 days to answer Gudenkauf's petition.

Jacobs' answer denied each of the four causes of action and raised the defense of lack of personal jurisdiction. Gudenkauf then moved for summary judgment, arguing the answer was still invalid as to Virginia Diesel because Jacobs could not lawfully appear in a Kansas court for the corporation, so there had been no legally valid answer.

In May 2017, Jacobs, acting pro se and purportedly on the corporation's behalf, sent Gudenkauf a document titled "subpoena duces tecum," demanding an inspection of the engine. This was the only formal discovery request filed with the court by either party. Gudenkauf responded by moving to quash the subpoena, arguing:

- it was not procedurally valid;
- neither the district court nor the court clerk had issued the subpoena under seal as required by K.S.A. 2020 Supp. 60-245(a)(2)(C), (a)(3);
- it was duplicative; and
- it was filed by a nonattorney agent of the corporation.

The record does not reflect a ruling on this motion to quash.

In July 2017, William C. O'Keefe entered his appearance on behalf of Jacobs and Virginia Diesel. O'Keefe moved in the district court to schedule a case management conference, but he did not revisit the "subpoena duces tecum" that Jacobs had filed, respond to Gudenkauf's motion to quash, or otherwise ask to inspect the engine pretrial.

In November 2018, the court conducted a one-day bench trial. Steve testified about the problems he had with the engine and the contact between the parties. He sent his old engine core to Jacobs in September 2014 at a cost of $867. He received an engine

4

from Jacobs that was supposed to be remanufactured, but after it was installed, his truck idled improperly, something was wrong with its fuel pressure, and it emitted blue-black smoke. He told Jacobs of the problems about three days after he installed the engine. Jacobs replied that it might be a problem with the engine sensors so he would send Steve some new sensors, but because of a claimed family emergency, Jacobs did not send the sensors. Steve then bought new sensors from Foley Industries in Topeka, but the problems remained even after he installed them.

When Steve told Jacobs he was still having the same issues, Jacobs sent him a new fuel injector for a malfunctioning cylinder. Steve was unwilling to install the internal parts himself, so he requested and received Jacobs' approval to have a local mechanic install them. The local mechanic told Steve the turbo in the engine was bad, so he contacted Jacobs, who agreed to send him a new turbo. Jacobs then sent him the wrong turbo but he bought a special pipe to make the turbo fit the engine. Still, the problems remained.

In November 2014, Jacobs called Steve and said he was having fuel injector issues with other engines he had remanufactured, and all the injectors needed to be replaced. After Steve made several more calls to Jacobs, he received new injectors in January 2015. Jacobs said he would fly to Kansas that month to install them, but he never did so, and Steve never had the new injectors installed. At that point, Steve was concerned that Jacobs still had not paid him $2,500 for the old engine core he had shipped to Jacobs.

In March 2015, Steve took the engine to Foley Industries, a Caterpillar dealer and mechanic. Foley tried to diagnose the issues but stopped after expending a certain amount of money trying to find the problem. Steve then had Foley install a different remanufactured engine at a cost of $30,176.00. The new Foley engine was $24,432.47 of that bill. Steve testified to and presented physical evidence of all damages claims except business loss.

5

Bruce Werth, a mechanic who had worked for Foley, testified on Gudenkauf's behalf about the engine's diagnosis there and about remanufactured engines, generally. Werth, who had 48 years of experience rebuilding engines, testified:

- there was oil in the six exhaust ports;
- the valve guides showed wear;
- the pistons were loose, showing they were not remanufactured;
- there was no evidence of Caterpillar parts numbers on the pistons, so Virginia Diesel had not rebuilt the engine using Caterpillar iron; and
- Virginia Diesel had never completely torn down the engine, so it could not be a remanufactured engine, contrary to Jacobs' representation.

Jacobs testified about his craftsmanship, his experience rebuilding engines, and his frequent contact with Gudenkauf over nearly 12 months. Jacobs also testified to the many things Werth got wrong, including whether Jacobs had remanufactured the engine rather than reconditioned it. Jacobs had not paid Gudenkauf $2,500 for his old engine core because the old core was cracked, significantly reducing its value. Generally, he agreed with the engine issues that Steve experienced, and the parties' attempts to remedy them, but part of the problem was because Steve had failed to check the fuel pressure.

The district court found that it lacked personal jurisdiction over Jacobs personally and dismissed him from the case. But because the contract was between Gudenkauf and Virginia Diesel and the parties had multiple contacts between Virginia and Kansas, the court found personal jurisdiction over the company. The district court also found Werth's testimony more credible and persuasive than Jacob's testimony. It found that Gudenkauf did not receive what it had contracted for, that Virginia Diesel had breached its contract, and that Virginia Diesel owed Gudenkauf $16,560.04:

6

- $11,800 for the money Gudenkauf had paid to Virginia Diesel for the remanufactured engine;
- $867.23 for its cost of shipping its old engine core to Virginia Diesel;
- $409.52 for the sensors it bought;
- $883.29 for labor for diagnosing engine problems;
- $100 for inspecting the engine; and
- $2,500 Virginia Diesel owed for its old engine core.

But the district court found Gudenkauf failed to meet its burden to prove its lost business cost of $2,750 and its cost of around $30,000 for the remanufactured engine it bought from Foley Industries.

Virginia Diesel timely moved for a new trial or, in the alternative, an amended judgment under K.S.A. 2020 Supp. 60-259, alleging an erroneous ruling by the court and a decision contrary to the evidence. Virginia Diesel also requested access to the engine so that its expert could tear down the engine to prove it had been remanufactured, not merely reconditioned. Its motion was supported by Jacobs' affidavit and pictures of both admitted and proposed evidence.

Gudenkauf opposed the motion. It also argued that the district court should amend the judgment in its favor and recalculate the damages to include diagnostic costs and installation costs it would not have paid to Foley Industries had Virginia Diesel performed under the contract. Virginia Diesel replied, again asking the district court to reopen discovery so it could prove Jacobs had remanufactured the engine, as he had claimed.

The district court denied Virginia Diesel's motion for a new trial or amended judgment, finding that it had failed to show sufficient grounds to grant the motion. The

district court also denied Gudenkauf's motion to modify the judgment. Virginia Diesel timely appeals, and Gudenkauf timely cross-appeals.

*Did the District Court Have Personal Jurisdiction Over Virginia Diesel?*

Virginia Diesel first argues that the district court lacked personal jurisdiction over it—an out-of-state corporation—because:  (1) Gudenkauf reached out to Virginia Diesel to conduct business; (2) it is a Virginia corporation with its principal place of business in Virginia; (3) it has no presence, contacts, or business in the state of Kansas; (4) its employees have never traveled to Kansas; (5) it only exchanged emails and phone calls with Gudenkauf; and (6) it would perform under the warranty only in Virginia.

A judgment rendered by a court without personal jurisdiction over the defendant is void. *Medina v. American Family Mut. Ins. Co.*, 29 Kan. App. 2d 805, 808, 32 P.3d 205 (2001). "The question of whether jurisdiction exists is one of law subject to unlimited review." *Norris v. Kansas Employment Sec. Bd. of Review*, 303 Kan. 834, 837, 367 P.3d 1252 (2016).

*Waiver of Personal Jurisdiction*

Although Virginia Diesel argues the district court lacked personal jurisdiction, it cites caselaw on subject matter jurisdiction. A party may raise subject matter jurisdiction any time because it cannot be waived. *Creecy v. Kansas Department of Revenue*, 310 Kan. 454, 459-60, 447 P.3d 959 (2019). But because personal jurisdiction is not a subset of subject matter jurisdiction, a party can intentionally or incidentally waive personal jurisdiction. See K.S.A. 2020 Supp. 60-212(b)(1)-(7).

> "[A] party can agree to personal jurisdiction by consent, including through constructive or implied consent such as waiver by failing to object. See *Insurance Corp. v. Compagnie*

8

*des Bauxites*, 456 U.S. 694, 703, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982); *Merriman v. Crompton Corp.*, 282 Kan. 433, 444, 146 P.3d 162 (2006); see also 5B Wright & Miller, Federal Practice & Procedure: Civil 3d § 1351 (2004) (noting challenges to personal jurisdiction can be waived by express or implied consent)." *In re Marriage of Williams*, 307 Kan. 960, 966, 417 P.3d 1033 (2018).

We find Virginia Diesel waived its personal jurisdiction defense by its agreements in the pretrial order.

As stated in K.S.A. 2020 Supp. 60-216(d), a pretrial order "controls the subsequent course of the action unless the court modifies it." "It is generally accepted that a pretrial order which specifies the issues to be tried, supersedes and replaces the pleadings." *Herrell v. Maddux*, 217 Kan. 192, Syl. ¶ 2, 535 P.2d 935 (1975). Accordingly, it is the pretrial order that controls the claims and defenses on which a case will be decided. See *Halley v. Barnabe*, 271 Kan. 652, 656-57, 24 P.3d 140 (2001).

"'The purpose of the pretrial conference . . . is to eliminate the element of surprise from trials and to simplify the issues and procedure by full disclosure to all parties of the anticipated evidence, and factual and legal issues.'" *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 18, 61 P.3d 68 (2002). When there has been no modification of the pretrial order, it is binding on the parties. See *Wenrich v. Employers Mutual Insurance Co.*, 35 Kan. App. 2d 582, 590-91, 132 P.3d 970 (2006); see also *Brown v. Hardin*, 197 Kan. 517, 519, 419 P.2d 912 (1966) ("Orders entered at pretrial conference have the full force of other orders of court and they control the subsequent course of the action, unless modified at the trial to prevent manifest injustice."). Thus, "[a]n issue or claim for relief that is not contained in the pretrial order should not be entertained by the trial court." *McCain*, 275 Kan. at 19.

The pretrial order, signed by Virginia Diesel's attorney and not modified, states in its "Jurisdiction and Venue" section, "[T]here is no dispute that this Court has proper

9

jurisdiction of the subject matter in this case and of the parties in this case, and venue is proper in this Court." The parties repeated their agreement that the court had personal jurisdiction over the parties in the pretrial order's "Stipulations" section. There, the first stipulation stated: "A. That this Court has jurisdiction over the parties and the subject matter of this action." And the parties stated the issues of fact or law remaining for trial, yet none mentioned personal jurisdiction. Virginia Diesel's factual contentions do assert that the case should be dismissed for lack of jurisdiction, but it nowhere reserves its right to appeal the district court's pretrial ruling that it had personal jurisdiction over Virginia Diesel.

By signing the pretrial order, Virginia Diesel stipulated that the court had personal jurisdiction over it and that there was no dispute over that issue. It thus expressly waived its personal jurisdiction defense. Its later acts are consistent with that waiver, as it did not argue at trial that the court lacked personal jurisdiction over it.

Nonetheless, the district court's decision after trial recognized Virginia Diesel's factual contention that the case should be dismissed for lack of personal jurisdiction and found to the contrary. So we also examine whether that ruling was erroneous.

*Kansas Long-Arm and Minimum Contacts Tests Are Met.*

In Kansas, the district court has personal jurisdiction over a nonresident defendant if a Kansas statute provides a basis for exercising jurisdiction, and if exercising that jurisdiction would comply with the due process requirements of the Fourteenth Amendment. *Merriman*, 282 Kan. at 440.

We are concerned here with specific jurisdiction, which refers to a state's power to adjudicate an action arising from or related to a nonresident defendant's actions within the

10

state. 282 Kan. at 440. The Kansas long-arm statute provides a basis for exercising specific jurisdiction under K.S.A. 2020 Supp. 60-308(b)(1).

We apply a two-step analysis to determine whether the State has specific personal jurisdiction over the nonresident defendant. *Kluin v. American Suzuki Motor Corp.*, 274 Kan. 888, 894, 56 P.3d 829 (2002). First, we must determine whether we have jurisdiction under Kansas' long-arm statute, K.S.A. 2020 Supp. 60-308(b). If jurisdiction is proper under the long-arm statute, then we determine whether the defendant had "minimum contacts" with the State so that exercising personal jurisdiction over the defendant complies with the due process requirements of the Fourteenth Amendment. 274 Kan. 888, Syl. ¶ 15.

### Kansas Long-Arm Statute

The panel liberally construes the long-arm statute to assert personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *Kluin*, 274 Kan. at 894. Jurisdiction will be proper under the long-arm statute "'"unless by no reasonable construction of the language could [the nonresident's conduct] be said to fall within the statute's terms."'" *Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, 274, 275 P.3d 869 (2012) (quoting *J.E.M. Corp. v. McClellan*, 462 F. Supp. 1246, 1250-51 [D. Kan. 1978]).

Gudenkauf argues personal jurisdiction is proper under the liberally construed Kansas long-arm statute, citing four subsections. We address only two of these—the transacting business and contract clauses.

> "Any person, whether or not a citizen or resident of this state, who in person or through
> an agent or instrumentality does any of the following acts, thereby submits the person

11

and, if an individual, the individual's representative, to the jurisdiction of the courts of this state for any claim for relief arising from the act:

"(A) Transacting any business in this state;

. . . .

"(E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state." K.S.A. 2020 Supp. 60-308(b)(1).

Gudenkauf contends: (1) Virginia Diesel conducts business in Kansas; (2) a substantial portion of the specific events occurred in Kansas; (3) the parties entered the contract in Kansas because Jacobs emailed the contract to Gudenkauf in Kansas; (4) Gudenkauf executed the contract in Kansas; and (5) Jacobs shipped the engine to Gudenkauf in Kansas.

Section (b)(1)(A) of the long-arm statute provides personal jurisdiction over an out-of-state defendant who transacts or conducts any business within Kansas. K.S.A. 2020 Supp. 60-308(b)(1)(A). Under this section: (1) the nonresident must purposefully do some act or consummate some transaction in Kansas; (2) the claim for relief must arise from the act or transaction; and (3) exercising jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice. *Mr. Cinnamon of Kansas, Inc. v. Hall*, 41 Kan. App. 2d 457, 463-64, 202 P.3d 734 (2009) ("The phrase 'transaction of any business' is all encompassing and was used by the legislature in its broadest legal sense with the intent to authorize the personal service of summons upon a nonresident corporate or individual defendant to the full extent of the due process clause."). A defendant need not physically enter Kansas to "transact business" here. *Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173, 1178 (D. Kan. 1998). But mere negotiation of a transaction over the phone with someone residing in Kansas is not enough to invoke the benefits and protections of Kansas laws required for long-arm jurisdiction. *Hudye Soil Services, Inc. v. Tyler*, 46 F. Supp. 2d 1157, 1162 (1999).

12

We find the district court had personal jurisdiction over Virginia Diesel under the "[t]ransacting any business" section of the liberally construed long-arm statute. Although Gudenkauf initiated the encounter, Virginia Diesel agreed to do business with Gudenkauf and to perform under a warranty which Virginia Diesel knew could require sustained contact with a Kansas party for at least a year. Although Jacobs did not step foot in Kansas because of either illness or scheduling conflicts, he had agreed to fly to Kansas to perform under the warranty. And Virginia Diesel expected Gudenkauf to perform under the agreement as well by not having work done on the engine without its prior approval and by shipping its old engine core to Virginia. When Steve requested remanufactured engine specifications in 2014, Virginia Diesel had every right to refuse to do business with Gudenkauf because it is in Kansas. But it did not. Instead, Virginia Diesel contracted with a Kansas corporation which is the subject of this litigation, purposefully consummating a transaction in Kansas. And Gudenkauf's claim for relief arises from that transaction.

Those same acts also meet Section (b)(1)(E) of the long-arm statute, which provides personal jurisdiction over an out-of-state defendant if the defendant enters an express or implied contract, by mail or otherwise, with a Kansan that either party will perform either in whole or in part in Kansas. K.S.A. 2020 Supp. 60-308(b)(1)(E). This part of the statute is commonly referred to as the "single act" portion because it provides personal jurisdiction over nonresident defendants based solely on the making or performance of a single contract within the state. *Bob Bergkamp Construction Co., Inc. v. Double T Excavation, Inc.*, No. 118,871, 2019 WL 166553, at *5 (Kan. App. 2019) (unpublished opinion). Jacobs sent the contract to Steve in Kansas, on Virginia Diesel's behalf, and it required Gudenkauf to send payment of $11,800 to Virginia Diesel. The contract also required Steve send his old engine core to Virginia Diesel, and required Virginia Diesel to pay $2,500 if the old core engine passed its inspection. Because Jacobs sent Steve a contract requiring performance from both parties and because Steve performed his part while in Kansas, personal jurisdiction over Virginia Diesel is proper

13

under this subsection. The first step of our analysis is met—we have jurisdiction under Kansas' long-arm statute, K.S.A. 2020 Supp. 60-308(b).

*Minimum Contacts*

We thus reach the second step of our analysis. To determine whether Virginia Diesel had minimum contacts with Kansas, we consider the quality and nature of Virginia Diesel's activity and ask whether it was reasonable and fair to require the defendant to defend in Kansas so as not to offend traditional notions of "fair play and substantial justice." *Merriman*, 282 Kan. at 464-65. In other words, the nonresident defendant must have purposefully availed itself of the privileges of conducting activities in the state of Kansas, thus invoking the benefits and protections of its laws. *Mr. Cinnamon of Kansas, Inc.*, 41 Kan. App. 2d at 467. "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." 41 Kan. App. 2d 457, Syl. ¶ 8. "[P]laintiff's unilateral activities in the forum state cannot be used to create jurisdiction over the defendant." *Aeroflex Wichita*, 294 Kan. at 281.

Virginia Diesel's acts meet this requirement. The parties had continual communication about the remanufactured engine for almost a year. There were, at a minimum, 50 calls between the parties in an ongoing attempt to fix the engine. Virginia Diesel not only shipped its engine to Kansas, but also sent fuel injectors to Kansas and promised to send other items, such as sensors, to Kansas to try to repair the engine. Jacobs offered to fly to Kansas to troubleshoot the issues. And the parties' contract contemplated that all warranty work would be done by Virginia Diesel, meaning Gudenkauf would have to ship the engine to Virginia for repairs, absent Virginia Diesel's agreement otherwise, and Virginia Diesel would again ship the repaired engine back to Kansas. Virginia Diesel intended to do business with Gudenkauf and was willing to send

14

its engine, parts, and labor to Kansas. And Virginia Diesel purchased and received shipment of Gudenkauf's old engine core, making a related purchase from Kansas.

Because Virginia Diesel purposefully availed itself of the privileges of doing business in Kansas, the district court's exercising personal jurisdiction over Virginia Diesel complies with traditional notions of fair play and substantial justice. Virginia Diesel purposefully reached out beyond Virginia and into Kansas by entering a contractual relationship that envisioned continuing contacts here. Under these circumstances, the district court correctly found it had personal jurisdiction over Virginia Diesel.

*Did the District Court Abuse Its Discretion by Denying Virginia Diesel's Motion for a New Trial or Amended Judgment?*

Virginia Diesel next argues that the district court abused its discretion by failing to grant its posttrial request for access to the engine so its expert could tear it down to prove it had been remanufactured. Virginia Diesel also argues the district court erroneously found that Jacobs did not remanufacture the engine.

*Standard of Review*

The district court may grant or deny a motion for new trial under K.S.A. 2020 Supp. 60-259(a), and an appellate court will not disturb that ruling unless the district court abused its discretion. *State v. Hirsh*, 310 Kan. 321, 333-34, 446 P.3d 472 (2019). Appellate courts use that same standard when reviewing the denial of a motion to alter or amend judgment under K.S.A. 2020 Supp. 60-259(f). *Wenrich*, 35 Kan. App. 2d at 585-86.

15

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

*Analysis*

Virginia Diesel alleges that the district court "failed to answer Defendant's request about inspection of the engine" but it is unclear what "request" Virginia Diesel is referring to. The appropriate time to make a discovery request for evidence existing and known by the parties is before trial. See *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 564, 419 P.3d 608 (2018). But Virginia Diesel did not file a request to inspect the engine before trial or a pretrial motion compelling discovery under K.S.A. 2020 Supp. 60-237. Jacobs did file a subpoena *duces tecum* early in the case, before Virginia Diesel had counsel, but that was met with a motion to quash and was unsuccessful. And the pretrial order states, as to "Discovery," "Discovery Complete." So if Virginia Diesel is asserting pretrial error, it has failed to preserve that claim.

Virginia Diesel's only other attempt to request discovery was in its motion for a new trial. It moved for a new trial, or in the alternative, an amended or altered judgment under K.S.A. 2020 Supp. 60-259(a)(1)(B) and (a)(1)(D), alleging the district court made an erroneous ruling and that its decision was contrary to the evidence. Virginia Diesel requested a new trial so it could have access to the engine to tear it down and prove Jacobs had remanufactured it, as he had represented. We thus focus on whether the district court abused its discretion by denying Virginia Diesel's posttrial motion.

The purpose of a motion for new trial is to give the district court an opportunity to re-examine rulings made during a trial and correct any errors in proceedings so that

16

parties may avoid the trouble and expense of having such errors corrected on appeal. *Kansas Homes Development Co. v. Kansas Turnpike Authority*, 181 Kan. 885, 890, 317 P.2d 789 (1957). Similarly, the purpose of a motion to alter or amend a judgment is to allow a district court to correct a prior error; it is not a chance to present evidence that the party could have, with reasonable diligence, submitted before the district court issues its final order. *Ross-Williams*, 55 Kan. App. 2d at 564.

Furthermore, "it is proper for a district court to deny a motion to alter or amend if the movant could have—with reasonable diligence—presented the argument or evidence before the entry of the final order." *Ross-Williams*, 55 Kan. App. 2d at 564. So a posttrial motion is not an appropriate method to obtain discovery when both parties knew of the evidence pretrial, as they did here. Virginia Diesel shows no reason why it could not have sought access to the engine during discovery so its expert could tear down the engine then, and no reason for waiting until after trial to first make that request. With that background, we turn to Virginia Diesel's specific claims of error.

*Erroneous Rulings and a Decision Contrary to the Evidence*

Virginia Diesel loosely argues that the district court erroneously found the engine had not been remanufactured or was unreasonable in denying its posttrial motion. First, it specifically argues that the district court erred by finding that Virginia Diesel had committed fraud. Concerned about its reputation, it sought to reopen and pay for discovery to prove otherwise. But the record shows that the district court never found that Virginia Diesel had committed fraud. Although the court's decision repeats plaintiff's factual contention that "defendants committed fraud," it does not further mention fraud. And it finds only that Virginia Diesel breached its contract. So Virginia Diesel fails to show the court made any finding of fraud.

17

Second, Virginia Diesel argued in its motion for a new trial that the district court's decision was contrary to the evidence in finding that it sold a faulty engine that had not been remanufactured. See K.S.A. 2020 Supp. 60-259(a)(1)(D). But only evidence as to whether the engine had been remanufactured came from conflicting testimony from two expert mechanics—Werth and Jacobs. Virginia Diesel relies on Jacobs' testimony, but the district court expressly found Werth to be a more reliable witness than Jacobs, and Werth opined that the engine was likely reconditioned, not remanufactured. Because we were not present at trial to observe witnesses' demeanor or hear their testimony, we cannot reweigh the evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Keel*, 302 Kan. 560, 566, 357 P.3d 251 (2015). Because the parties presented no evidence other than conflicting expert testimony as to whether Jacobs remanufactured the engine, and the court's decision was based on a credibility call between those experts, we do not agree that the district court's decision was contrary to the evidence.

Third, Virginia Diesel generally argues that the district court abused its discretion by denying the motion because it relied on an error of fact—that the engine was not remanufactured. But a reasonable person could agree, for the reasons stated above, with the district court's finding on that issue and with its decision to deny a motion for a new trial or amended judgment. The court thus did not abuse its discretion. We affirm the appeal.

*Did the District Court Abuse Its Discretion by Failing to Award Gudenkauf More Damages?*

*Preservation*

Gudenkauf's cross-appeal asserts that the district court abused its discretion by failing to award it damages for loss of business and for the new engine Gudenkauf bought from Foley Industries.

18

*Standard of Review and Basic Legal Principles*

Generally, the purpose for awarding damages is to restore the plaintiff to the position that party was in before the injury. See *Burnette v. Eubanks*, 308 Kan. 838, 857, 425 P.3d 343 (2018). When reviewing the district court's remedy aimed to make the injured party whole, we do not determine whether the fashioned remedy was the best available remedy. *Peterson v. Ferrell*, 302 Kan. 99, 106, 349 P.3d 1269 (2015). Rather, we determine whether the award was erroneous as a matter of law or whether it constitutes an abuse of discretion. 302 Kan. at 106.

Damage awards are discretionary, but the party requesting damages must have some reasonable basis for computing that award to enable the district court to "arrive at an approximate estimate thereof." *Peterson*, 302 Kan. at 106. The appellate court does not reweigh evidence or pass on the credibility of witnesses. 302 Kan. at 106-07. But when determining whether evidence of alleged damages is too conjectural or speculative to support a damages' claim, the appellate court reviews the record in the light most favorable to the prevailing party. 302 Kan. at 107.

*Analysis*

Gudenkauf argues the district court erred by failing to award damages for its loss of business and its cost of buying a remanufactured engine from Foley. It claims that Steve's testimony was uncontroverted as to these damages, so they should be awarded.

But this claim gives rise to a couple of procedural problems. First, this claim is different than Gudenkauf's claim to the district court. Gudenkauf argued to the district court that it erred by not awarding damages for the money Gudenkauf spent to diagnose problems with Virginia Diesel's engine and for the cost to install Foley's new engine. Costs of diagnosing and installing are different from costs from lost business or buying

19

an engine. Generally, a party may not raise issues on appeal that it did not first raise to the district court. See *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020) (appellate courts seldom consider an unpreserved claim but will recognize potential exceptions like issues involving fundamental rights). Gudenkauf does not argue any exceptions to the general rule, so he fails to preserve the damages issues for our review.

Second, Gudenkauf fails to sufficiently brief this issue. Although Gudenkauf provides a detailed list of damages relative to the breached contract, it does not argue why the court should consider the business loss and the cost of a new remanufactured engine from Foley Industries in the damages award. Rather, Gudenkauf's brief repeatedly cites Steve's trial testimony stating what he believed Virginia Diesel owed him. It makes no legal argument and cites no legal authorities. Inadequately briefed issues are considered waived or abandoned, and this issue is inadequately briefed. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017).

Although we have a solid basis for dismissing Gudenkauf's cross-appeal for failure to comply with Supreme Court Rule 6.02(a) (requiring the appellant to state "[t]he arguments and authorities relied on"), we will still address the issues it is trying to raise. (2021 Kan. S. Ct. R. 36).

The district court's stated goal was to make Gudenkauf whole. This aligns with the basic principle of damages, which is to make a party whole by putting them back in the position that they were before the injury, not to grant the party a windfall profit. *Evenson v. Lilley*, 295 Kan. 43, Syl. ¶ 5, 282 P.3d 610 (2012). See *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 527, 113 P.3d 241 (2005). The district court denied Gudenkauf's claimed cost for the remanufactured engine it bought from Foley to replace the engine it bought from Virginia Diesel. Steve testified that Virginia Diesel should pay for some of the new engine cost "because of all the trouble he went through to get things right." But to award Gudenkauf damages of $11,800 for the money it paid to purchase

Virginia Diesel's engine, plus the money it paid to purchase Foley's engine would have compensated Gudenkauf twice for the same problem. By avoiding a windfall to Gudenkauf, the court followed Kansas law.

As for the claim of business loss, the basic principle is that there must be reasonable certainty in proof of loss. Absolute certainty is not required. In Kansas, "loss of profits resulting from a breach of contract may be recovered as damages when such profits are proved with reasonable certainty, and when they may reasonably be considered to have been within the contemplation of the parties." *Vickers v. Wichita State University*, 213 Kan. 614, 618, 518 P.2d 512 (1974). Gudenkauf had the burden to show that the nature of the business on which it claimed anticipated profits supported an inference of definite profits grounded upon a reasonably sure basis of facts. *Empire Manufacturing Co. v. Empire Candle, Inc.*, 273 Kan. 72, 77, 41 P.3d 798 (2002).

Steve provided the district court with receipts and testimony to prove some of his alleged damages. But he had neither receipts nor specific testimony to prove his loss of business, and the district court found that his testimony lacked any specific, concrete details about those damages. The district court thus disallowed this damage claim as speculative. We have reviewed the testimony Steve cites in the light most favoring Gudenkauf. When Steve was asked how he calculated $2,750 as his business loss, he replied that he was not able to say but referenced down time during phone calls. When asked how much time he had used to calculate that amount, he did not specify a number of hours but generally said it was a lot of time. When asked how many hours and at what rate, he replied that he did not have that information. We agree that the evidence is too speculative or uncertain to support an award of damages for business loss. See *Peterson*, 302 Kan. at 106-07.

Having reviewed the testimony, we cannot say that no reasonable person would agree with the district court's decision. The district court did not abuse its discretion in determining damages. We thus affirm the cross-appeal.

Affirmed.